Albert ARAIZA, Appellant,

v.

STATE of Texas, Appellee.

Nos. 04–94–00697–CR, 04–94–00698–CR.

Court of Appeals of Texas,
San Antonio.

Aug. 28, 1996.

Rehearing Overruled Sept. 23, 1996.

David W. Friesenhahn, Langham and Friesenhahn, New Braunfels, for Appellant.

Brenda Levenstein, Assistant Criminal District Attorney, San Antonio, for Appellee.

Before LÓPEZ, STONE and DUNCAN, JJ.

## OPINION

DUNCAN, Justice.

A jury found Albert Araiza guilty of murdering Richard Hernandez and attempting to murder Rene De Los Santos. Araiza now appeals, complaining that the trial court erred in admitting and excluding certain evidence and in limiting his cross-examination of one of the State's witnesses. We affirm.

### FACTS

One night in October 1992, while Richard Hernandez and Rene De Los Santos were stopped at the corner of West Woodlawn and Blanco Streets, a passenger in the pickup ahead of them pulled a gun, shot Hernandez, and shot at De Los Santos. Hernandez died as a result of his wounds.

Shortly after Hernandez's murder, a juvenile, Mark Jimenez, confessed to and was charged with the murder of Hernandez and the attempted murder of De Los Santos. However, when the case arrived at the district attorney's office, an unresolved discrepancy between the participants' stories appeared to preclude successful prosecution of Jimenez. Although it was undisputed that Jimenez was in the bed of the pickup at the time of the shooting, De Los Santos insisted the killer stepped out of the passenger side of the pickup. De Los Santos simply could not and would not identify Jimenez as the killer. As a result of these discrepancies, the investigation was continued.

Ultimately, Jimenez retracted his confession and told investigators that he had confessed to the crimes pursuant to a command from Araiza, the leader of Jimenez's gang. According to Jimenez, Araiza instructed Jimenez to confess because Jimenez, unlike Araiza, was a juvenile and so would receive more favorable treatment in the criminal justice system. Araiza was subsequently indicted for the murder of Hernandez and the attempted murder of De Los Santos. The jury found Araiza guilty of murdering Hernandez and attempting to murder De Los Santos and assessed Araiza's punishment at life in

prison on the murder charge and twenty years in prison on the attempted murder charge.

## EVIDENTIARY RULINGS

In his first, second, and fourth points of error, Araiza complains of evidentiary rulings by the trial court. We overrule these points because Araiza has not demonstrated that the trial court abused its discretion in ruling as it did.

### *Standard of Review*

■ Complaints regarding the admission or exclusion of evidence are subject to an abuse of discretion standard of review. *Erdman v. State*, 861 S.W.2d 890, 893 (Tex. Crim.App.1993). A trial court abuses its discretion only when it "applie[s] an erroneous legal standard, or when no reasonable view of the record could support the trial court's conclusion under the correct law and the facts viewed in the light most favorable to its legal conclusion." *DuBose v. State*, 915 S.W.2d 493, 497–98 (Tex.Crim.App.1996).

### *Unadjudicated Extraneous Offenses*

■ In his first point of error, Araiza argues that the trial court erred during the punishment phase of his trial by admitting evidence that Araiza was on deferred adjudication for aggravated assault with a deadly weapon and unlawfully carrying a weapon. We disagree.

■ Before 1975, article 37.07(3)(a) of the Texas Code of Criminal Procedure rendered evidence of a deferred adjudication order inadmissible during the punishment phase. *Brown v. State*, 716 S.W.2d 939, 948 (Tex. Crim.App.1986). In 1975, however, the Legislature enacted article 42.12, which created a scheme for deferred adjudication of guilt and "probation." *Brown*, 716 S.W.2d at 948–49; *see* Act of May 2, 1975, 64th Leg., R.S., ch. 231, 1975 Tex. Gen. Laws 572, *amended by*

Act of May 28, 1989, 71st Leg., R.S., ch. 785, § 4.17, 1989 Tex. Gen. Laws 3471, 3501. Section 3d(c) of article 42.12 expressly provided that, "upon conviction of a subsequent offense," evidence that "a defendant had previously received probation shall be admissible . . . on the issue of penalty" for "conviction of a subsequent offense."[1] *Brown*, 716 S.W.2d at 948–49. Interpreting this provision, the court of criminal appeals held in *Brown* that "a pending order of deferred adjudication is admissible at the penalty stage of a bifurcated trial." *Brown*, 716 S.W.2d at 950.[2] Araiza argues, however, that the court of criminal appeals effectively overruled *Brown* in *Grunsfeld v. State*, 843 S.W.2d 521 (Tex. Crim.App.1992). We disagree.

In *Grunsfeld*, the issue presented was the effect of the 1989 amendment to article 37.07(3)(a), which permitted the introduction of "*any matter the court deems relevant to sentencing, including* the prior criminal record of the defendant, his general reputation and his character." *Grunsfeld*, 843 S.W.2d at 523 (emphasis in original). The State argued that because "the term 'including' is one of inclusion," "admissible evidence is not *limited* to a defendant's prior criminal record, general reputation and character, but may include *anything* the trial court deems relevant," including prior unadjudicated offenses. *Id.* (emphasis in original). The appellants, on the other hand, argued that because the amendment left the definition of "prior criminal record" intact, prior unadjudicated offenses were still inadmissible. *Id.* The court of criminal appeals agreed with the appellants, holding that "even if deemed relevant to sentencing by the trial court, evidence is not admissible at punishment, *unless* (1) it is permitted by the Rules of Evidence, and (2) if the evidence sought to be admitted is evidence of an extraneous offense, it satisfies article 37.07(3)(a)'s definition of prior criminal record." *Id.* (emphasis in original)

---

1. Section 3d(c) of article 42.12 is now codified at section 5(c)(1) of article 42.12. TEX.CODE CRIM. PROC. ANN. art. 42.12, § 5(c)(1) (Vernon Supp. 1996).

2. Araiza correctly points out that *Brown* was criticized in *Gaynor v. State*, 788 S.W.2d 95, 100 (Tex.App.—Houston [14th Dist.] 1990, pet. ref'd).

We disagree, however, with that court's conclusion that *Brown* is inconsistent with article 37.07(3)(a) and further note that, despite its disagreement, the Fourteenth Court of Appeals followed *Brown*, as it was bound to do—just as this court is bound.

(footnotes omitted). *Grunsfeld* did not deal with a deferred adjudication order, nor did it reference section 3d(c) of article 42.12.

In our view, *Grunsfeld* did not effectively overrule *Brown.* Rather, *Grunsfeld* deals with the general rule governing unadjudicated extraneous offenses set forth in article 37.07(3)(a), while *Brown* deals with the specific provision governing deferred adjudication orders set forth in article 42.12(3d)(c).[3] Therefore, the trial court did not err in admitting the evidence establishing that Araiza had been granted deferred adjudication, and we overrule Araiza's first point of error.

### Photographic Lineup

■ In his second point of error, Araiza argues that the trial court erred in admitting a four-picture photographic lineup during the guilt/innocence phase because the lineup consisted of "mug shots" taken before a height-measuring device and thus placed before the jury evidence of an extraneous offense. Again, we disagree.

The admissibility of mug shots is a question of degree. At one end of the spectrum, it is clear that when the photograph itself establishes that it was taken by the police in the context of a particular case, the photograph is inadmissible in the guilt/innocence phase because "it tend[s] to show the commission of an extraneous offense and, therefore, to infringe [the defendant's] fundamental right to the presumption of innocence,...." *Richardson v. State,* 536 S.W.2d 221, 223 (Tex.Crim.App.1976) (introduction of mug shot that showed front and side view of defendant and depicting a sign that read "SAN ANTONIO PD P7302316 10–22 73 7–15 AM" was reversible error). At the other end of the spectrum, it is also clear that when all marks identifying a picture as one taken by the police have been removed, the trial court does not err in admitting the photograph. *Huerta v. State,* 390 S.W.2d 770, 772 (Tex.Crim.App.1965). The issue is whether the picture "implies a police record." *Johnson v. State,* 583 S.W.2d 399, 403 (Tex.Crim.App.1979) (frontal and profile photographs that showed a

chain around the defendant's neck admissible because they did not necessarily imply a police record).

In this case, all of the pictures in the lineup are frontal views, all depict subjects wearing street clothes, none depicts a subject wearing a chain, and none contains a sign or any other overt indication that any of the subjects had a police record. Araiza's complaint thus rises or falls upon whether a height-measuring device necessarily implies a police record. We do not believe it does. We therefore hold that the trial court did not abuse its discretion in admitting the photographic lineup, and we overrule Araiza's second point of error.

### Mark Jimenez's Statement

■ In his fourth point of error, Araiza complains of the trial court's exclusion from evidence of Mark Jimenez's October 30, 1992 statement. Araiza argues that the entire statement was admissible under the rule of optional completeness contained in Rule 107 of the Texas Rules of Criminal Evidence because Jimenez was asked on direct examination whether Araiza had instructed him to tell the police many of the details contained in the statement. We disagree.

Rule 107 provides:

When part of an act, declaration, conversation, writing or recorded statement is given in evidence by one party, the whole on the same subject may be inquired into by the other, as when a letter is read, all letters on the same subject between the same parties may be given. When a detailed act, declaration, conversation, writing or recorded statement is given in evidence, any other act, declaration, writing or recorded statement which is necessary to make it fully understood or to explain the same may also be given in evidence. "Writing or recorded statement" includes depositions.

TEX.R.CRIM. EVID. 107. Rule 107 is properly invoked when an opposing party reads part, but not all, of a statement into evidence. *E.g., Livingston v. State,* 739 S.W.2d 311,

---

**3.** Similarly distinguishable are the remaining cases cited by Araiza. *See, e.g., Cedillo v. State,* 901 S.W.2d 624 (Tex.App.—San Antonio 1995, no pet.).

331–32 (Tex.Crim.App.1987), *cert denied,* 487 U.S. 1210, 108 S.Ct. 2858, 101 L.Ed.2d 895 (1988). In that instance, the remainder of the statement "on the same subject" is admissible to "reduce the possibility of the fact finder receiving a false impression. . . ." *Roman v. State,* 503 S.W.2d 252, 253 (Tex.Crim. App.1974). On the other hand, the mere reference to a statement or a quotation from it does not invoke the rule. *Jernigan v. State,* 589 S.W.2d 681, 694–95 (Tex.Crim.App. 1979); *Pinkney v. State,* 848 S.W.2d 363, 367 (Tex.App.—Houston [1st Dist.] 1993, no pet.); *Grunsfeld v. State,* 813 S.W.2d 158, 163 (Tex. App.—Dallas 1991), *aff'd on other grounds,* 843 S.W.2d 521 (Tex.Crim.App.1992).

In this case, Jimenez testified that he was "told to say everything that [he] put down in the first statement." The prosecutor then asked whether particular, detailed assertions in his October 30 statement were made at Araiza's instruction. Jimenez answered that they were. On cross-examination, Jimenez was repeatedly questioned as to the level of detail, and the details, contained in the statement. At several points during cross-examination, Araiza's counsel made his theory— that Jimenez's statement was too detailed to have been anything other than the truth— abundantly clear:

A: Everything happened fast. I don't know.

Q: So, you really don't recall the details too well of what Sonny did, as far as shooting, but you want the members of this jury to believe that [Araiza] gave you an order, and that you memorized a page and a half confession that you gave to Detective Rodriguez? Is that right?

A: I don't remember everything that happened.

Q: But you remembered it well enough— you said everything in your confession—and this really isn't a statement. You confessed on October 30th, 1992, to killing Richard Hernandez, didn't you?

A: Yes.

Q: And you're saying—you're telling this jury that everything that you said in this confession came from [Araiza], right?

A: Yes.

Q: That Albert gave an order and told you what details to say two days after the shooting, right?

A: Yes.

Q: And you want this jury to believe that you have the capacity to memorize a detailed confession, that Detective. Rodriguez said it was a detailed confession. That you memorized that detailed confession and you were able to fool a trained, seasoned homicide detective into believing that you committed the murder. Is that right?

A: Yes.

■ The record before the jury and now this court establishes that while Jimenez was repeatedly asked by the State and by Araiza whether Araiza instructed him to make particular statements, at no point was a portion of the statement otherwise read to the jury. Indeed, it was not until after the State rested that Araiza asked that the statement be admitted under Rule 107. At that time, the experienced trial judge agreed with the State that the statement was inadmissible. We agree. Because the record does not establish that any portion of Jimenez's statement was read to the jury, Rule 107 was not properly invoked, and the trial court did not err in excluding the statement. Moreover, in light of the fact that Araiza's theory, and the factual basis for it, were made perfectly clear during both direct and cross-examination, we further hold that the error, if any, was harmless beyond a reasonable doubt. *See* TEX. R.APP. P. 81(b)(2); *Harris v. State,* 790 S.W.2d 568, 587–88 (Tex.Crim.App.1989).

### CROSS-EXAMINATION OF LINDA JIMENEZ

In his third point of error, Araiza argues that the trial court erred in refusing to permit cross-examination of Jimenez's mother, Linda, regarding criminal charges pending against her and her motives for testifying favorably to the State. We hold that the trial court did not err and, even if it did, the error was harmless beyond a reasonable doubt.

"'[T]he exposure of a witness' motivation in testifying is a proper and important function'" of the right to the "effective" cross-examination guaranteed by the Confrontation Clause of the Sixth Amendment to the United States Constitution. *Delaware v. Van Arsdall*, 475 U.S. 673, 678–79, 106 S.Ct. 1431, 1435, 89 L.Ed.2d 674, 683 (1986) (quoting *Davis v. Alaska*, 415 U.S. 308, 316–17, 94 S.Ct. 1105, 1110, 39 L.Ed.2d 347, 353–54 (1974)). As a result, "cross-examination on pending charges in order to establish motive or bias is generally an exception to the rule ... that a witness may only be impeached with final convictions." *Carmona v. State*, 698 S.W.2d 100, 102–03 (Tex.Crim.App.1985). However, "trial judges retain wide latitude ... to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." *Van Arsdall*, 475 U.S. at 679, 106 S.Ct. at 1435. Therefore, the right to effective cross-examination is not violated when the trial court precludes a defendant from asking a witness about an unrelated pending charge *if* "the defendant has otherwise been afforded a thorough and effective cross-examination and ... the bias and prejudice of the witness is ... patently obvious." *Carmona*, 698 S.W.2d at 104.

In this case, Araiza sought to cross-examine Linda Jimenez regarding her pending criminal charges for felony possession of cocaine, felony possession of marijuana (probated), driving while intoxicated, and burglary (probated). Plainly, these criminal charges were unrelated to the murder and attempted murder charges against Araiza. Accordingly, under *Carmona*, if Ms. Jimenez's bias and prejudice were "patently obvious," and the cross-examination of her was "thorough and effective," the trial court did not err in permitting Araiza's counsel to question her only as to the adjudicated burglary charge. Both conditions were met in this case.

In his cross-examination of Ms. Jimenez, Araiza's counsel elicited from Ms. Jimenez that she had been convicted of burglary and possession of marijuana; a motion to revoke her probation had been filed and a warrant was out for her arrest on the night of the murder; she was in jail at the time of trial; and she was aware not only that her son could receive forty years to life in prison if convicted of murdering Hernandez but also that if Araiza were convicted the State would not go after her son. Araiza thus established that Ms. Jimenez's testimony might well be biased and prejudiced in favor of the State for two reasons—to protect her son from prosecution and to advance her own interests in her pending cases. Under these circumstances, we believe Araiza was permitted "thorough and effective cross-examination" of Ms. Jimenez and further that her biases and prejudices were made "patently obvious" to the jury. Accordingly, the trial court did not err in limiting Araiza's cross-examination of Ms. Jimenez.

We further conclude that even if the trial court erred in limiting Araiza's cross-examination of Ms. Jimenez, the error was harmless beyond a reasonable doubt. Not only was the cross-examination of Ms. Jimenez sufficiently "thorough and effective" to establish her biases and prejudices, but Ms. Jimenez's testimony on material points was uncontradicted, cumulative of that of other witnesses, and not particularly significant to the State's case against Araiza, which was a strong one resting in large measure upon the testimony of De Los Santos and Mark Jimenez. *Van Arsdall*, 475 U.S. at 684, 106 S.Ct. at 1438; *Shelby v. State*, 819 S.W.2d 544 (Tex.Crim.App.1991). For these reasons, we overrule Araiza's third point of error and affirm the judgment.