TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-97-00293-CR






Alfred Lester Davis, Appellant




v.




The State of Texas, Appellee







FROM THE DISTRICT COURT OF BASTROP COUNTY, 21ST JUDICIAL DISTRICT


NO. 8638, HONORABLE JOHN L. PLACKE, JUDGE PRESIDING







 A jury found appellant guilty of aggravated robbery of a person sixty-five years of age or
older. Tex. Penal Code Ann. § 29.03 (West 1994). The district court assessed punishment at
imprisonment for fifty years. Appellant contends the court erroneously admitted evidence and erred in
failing to require a competency hearing before trial. We will affirm the judgment.


THE CONTROVERSY


 On October 30, 1996, the attendant at the B & L Car Wash in Smithville, who is over the
age of sixty-five, was in his office when he was approached by a young man who told him that one of the
change machines was broken. The attendant left his office and followed the young man towards the car
bays. A woman told the attendant that the broken machine was in the car bay furthest from his office. The
attendant walked over to the change machine and began to open it. As he was opening the change
machine, appellant approached him from behind, grabbed him by the throat, and pulled him backward to
the ground. Appellant yelled at the attendant to hand over his billfold; he then reached into the attendant's
pockets and took his wallet. As a result of the attack, the attendant had to seek medical attention for
injuries to his throat, chest, and breast bone.


ERRONEOUSLY ADMITTED EVIDENCE


 In his first point of error, appellant contends the trial court erred in admitting a six-picture
photographic lineup during the guilt/innocence phase because the lineup included a "mug shot" of appellant,
thereby placing before the jury evidence of an extraneous offense. See Araiza v. State, 929 S.W.2d 552,
555 (Tex. App.--San Antonio 1996, pet. ref'd). (1) All six photographs were identified and described by
Robert Edward Shelby, a Captain Investigator with the Smithville Police Department, who testified that the
victim reviewed the photographs and designated his identification of appellant by signing, dating and
marking the time on appellant's photograph.

 Whether a "mug shot" is admissible is a question of degree:


At one end of the spectrum, it is clear that when the photograph itself establishes that it was
taken by the police in the context of a particular case, the photograph is inadmissible in the
guilt/innocence phase because 'it tend[s] to show the commission of an extraneous offense
and, therefore, to infringe [the defendant's] fundamental right to the presumption of
innocence, . . . .'



Araiza, 929 S.W.2d at 555 (quoting Richardson v. State, 536 S.W.2d 221, 223 (Tex. Crim. App.
1976)). However, "when all marks identifying a picture as one taken by the police have been removed,
the trial court does not err in admitting the photograph." Id. (citing Huerta v. State, 390 S.W.2d 770, 772
(Tex. Crim. App. 1965)).

 In this case, the photograph of appellant depicts a frontal view showing on appellant's chest
a sign containing the following information, "SMITHVILLE TEXAS POLICE 2507 051296." The date
indicated on appellant's photograph is May 12, 1996. According to the indictment, the offense for which
appellant was on trial occurred on or about October 30, 1996. Thus, the photograph of appellant indicates
a previous arrest some six months before the offense for which appellant was on trial, thereby "impl[ying]
a police record." Johnson v. State, 583 S.W.2d 399, 403 (Tex. Crim. App. 1979); see also Richardson,
536 S.W.2d at 223 (introduction of mug shot that showed front and side view of defendant and depicting
a sign that read "SAN ANTONIO PD P7302316 10--22 73 7--15 AM" was reversible error).

 "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a
person in order to show that he acted in conformity therewith." Tex. R. Crim. Evid. 404(b). See also
Etheridge, 903 S.W.2d at 11; Lockhart v. State, 847 S.W.2d 568, 570 (Tex. Crim. App. 1992), cert.
denied, 114 S. Ct. 146 (1993). The marks identifying appellant's photograph as one taken by the police
tended to show his commission of a previous offense; if the marks were relevant for another purpose, the
State did not show as much. Etheridge, 903 S.W.2d at 11 (citing Lockhart, 847 S.W.2d at 573)
(additional citations omitted). We conclude the trial court abused its discretion in admitting the unedited
photograph of appellant. Id. 

 The State contends that even if the trial court erred in admitting the photograph of appellant,
the error is harmless. We agree. The photograph was part of a six-photograph spread shown to the victim
following the offense. Four of the six photographs, including appellant's, were mug shots. Appellant does
not contend that the pretrial identification procedure was impermissibly suggestive or that it tainted the
victim's in-court identification. In addition to the victim's identification, appellant was also identified by his
two accomplices, who testified that he committed the robbery. Although the defense attempted to impeach
the identification testimony, the witnesses remained steadfast in their identifications. In its jury argument,
the State did not mention appellant's previous arrest. Appellant has not shown that the erroneous
admission of the mug shot affected a substantial right at the guilt phase of trial. Tex. R. App. P. 44.2(b). (2)

 At the punishment phase before the court, five witnesses testified to appellant's bad
character. Another witness testified he was assaulted by appellant one month after the instant offense. 
Appellant testified in his own behalf and admitted he had been arrested for "lots of things." During cross-examination, appellant admitted previous juvenile adjudications for assault (three cases) and convictions
for criminal trespass (two cases), evading or resisting arrest (two cases), theft, and burglary of a habitation. 
Under the circumstances, admission of the mug shot did not affect appellant's substantial rights at the
punishment stage. We overrule point of error one.


COMPETENCY HEARING


 In his second point of error, appellant contends the trial court was presented with evidence
to support a finding of incompetency, thereby requiring the court to grant appellant a competency jury trial. 
See Tex. Code Crim. Proc. Ann. art. 46.02, § 4(a) (West Supp. 1998). Article 46.02, section 4 provides,
in pertinent part, that "[i]f the court determines that there is evidence to support a finding of incompetency
to stand trial, a jury shall be impaneled to determine the defendant's competency to stand trial." Tex. Code
Crim. Proc. Ann. art. 46.02, § 4(a) (West Supp. 1998).

 Our review of the record reveals that the trial court properly determined that appellant was
competent to stand trial and that a jury hearing on the issue of appellant's competency was not required. 
See Guzman v. State, 923 S.W.2d 792, 797 (Tex. App.--Corpus Christi 1996, no pet.). In response
to appellant's counsel's request, and before voir dire, the trial judge inquired into appellant's competency
by allowing direct and cross-examination of appellant and by submitting additional questions to appellant. 
See Mata v. State, 632 S.W.2d 355, 359-60 (Tex. Crim. App. 1982) (court declined to decide whether
a bona fide doubt as to appellant's competency was raised because trial judge's informal but effective
questioning supported his determination not to empanel a jury to decide appellant's competency). 
Appellant testified on direct examination that he was a patient in a mental institution in 1992 and 1993, but
had since been able to control his mental deficiencies by taking medication for depression and anger.

 The trial judge then asked appellant about his understanding of the charges against him and
the jury trial process:


THE COURT: Have you and your attorney discussed the possible range of punishment
in the event that you're found guilty? Do you know what the possible penalties are?


A: All I know is what it said on my indictment paper.


THE COURT: No. I mean, if you're found guilty what . . . could happen to you?


A: I could go to the penitentiary.


THE COURT: For how long?


A: For 50 years what the paper said.


THE COURT: And how far did you go in school?


A: I had a GED.


. . . .


THE COURT: What kind of employment have you had in the past?


A: I did, you know, odd jobs here and there, but I never had any full-time employment.


THE COURT: Do you have any problem in understanding the process that is going on
right now? Do you understand that there's a jury here and that your attorney has asked
for 12 people to decide whether you're guilty or innocent?


A: All I know is what they tell me.


THE COURT: Well, that's what I'm asking you. What did they tell you?


A: Well, that I was going to be going for a jury--


THE COURT: A jury trial?


A: Uh-huh.


THE COURT: And you know what a jury trial is?


A: Uh-huh.


THE COURT: And have you discussed with your lawyer-- have y'all talked about the
charges against you and what they said that you did? Have you and your lawyer talked
about this?


A: Just yesterday talked about them.


. . . .


THE COURT: Is there anything about this process that you don't understand?


A: I don't understand some of the charges that they have me charged with.


THE COURT: Some of the charges?


A: Yeah.



Appellant later testified that he understood the nature of the charges against him:



MR. PENICK: Do you understand the nature of the charges against you?


A: I understand what the charges [are], but I don't see why, you know, they [are] saying
I did it.



 We find that appellant's responses to the trial judge's questions justify the trial court's
determination on the issue of appellant's competency. On this record, the trial court could conclude that
nothing in the evidence would support a finding of incompetency to stand trial. We overrule point of error
two.

 We affirm the judgment.



 

 John Powers, Justice

Before Justices Powers, Aboussie and B. A. Smith

Affirmed

Filed: April 24, 1998

Do Not Publish

1. Appellant's counsel objected to the photographic lineup based on the fact that the "pictures depict
people who apparently have been involved in prior criminal exposures" and "on the prejudicial effect." The
State argues that appellant did not preserve error for appeal because he failed to specify his objection to
the admission of the "mug shot" under Texas Rule of Criminal Evidence 404(b). We disagree. See
Etheridge v. State, 903 S.W.2d 1, 10 n.5 (Tex. Crim. App. 1994), cert. denied, 116 S. Ct. 314 (1995).
2. The State based its argument of harmless error on former Rule 81(b)(2), which has been replaced
by Rule 44.2. See Tex. R. App. P. 44.2. Because we find that the error is statutory, rather than
constitutional, we apply Rule 44.2(b).


ion not to empanel a jury to decide appellant's competency). 
Appellant testified on direct examination that he was a patient in a mental institution in 1992 and 1993, but
had since been able to control his mental deficiencies by taking medication for depression and anger.

 The trial judge then asked appellant about his understanding of the charges against him and
the jury trial process:


THE COURT: Have you and your attorney discussed the possible range of punishment
in the event that you're found guilty? Do you know what the possible penalties are?