Affirmed and Memorandum Opinion filed October 23, 2007








Affirmed and Memorandum Opinion filed October 23, 2007.

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-06-00811-CR

____________

 

LEONEL MARTINEZ RAMIREZ, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On Appeal from the 268th
District Court

Fort Bend County, Texas

Trial Court Cause No. 41,994A

 



 

 M E M O R A N D U M   O P I N I O N

Appellant, Leonel Martinez Ramirez, was found guilty by a
jury of intoxication manslaughter and sentenced to 14 years in prison.  On
appeal, he raises two points of error: (1) the trial court erred in admitting
an unreliable statement that was improperly translated; and (2) the trial court
erred in excluding his exculpatory statements.  We affirm.

I.  BACKGROUND








On the morning of January 29, 2005, Rahat Sher was struck
by a white truck speeding through a red light.  The impact of the collision
split the victim=s vehicle in two and killed him. 
Immediately after the fatal collision, two Hispanic males were seen exiting the
passenger side of the white truck and running away from the scene of the
accident.  The two Hispanic males were chased down by witnesses and brought
back to the scene of the accident, where they were handed over to Missouri City
Police Officer Mike Zimmer.  Appellant was one of the Hispanic males captured. 
At the scene of the accident, Officer Zimmer observed beer bottles in the white
truck and smelt an odor of alcohol emitting from appellant.

Shortly thereafter, appellant was taken to the emergency
room at Hermann Memorial Fort Bend to receive medical attention for physical
injuries he sustained in the collision.  Sharra Cates, an emergency room nurse
at Hermann Memorial, treated appellant when he arrived at the hospital.  As
part of her medical duties, Nurse Cates began to make a medical assessment of
appellant=s injuries; in doing so, she asked appellant a series
of questions about the accident.  Most of the questioning between Nurse Cates
and appellant was translated by the hospital=s security guard,
Martin Moreno, because appellant was not fluent in English.  During the
questioning, appellant told Nurse Cates that he was the driver of the white
truck and that he had been drinking the night before the collision.  A blood
sample was also taken from appellant, which showed his blood alcohol
concentration to be .18.     

Later the same day, Detective Marcus Montemayor of the
Missouri City Police Department went to the hospital to get a statement from
appellant in connection with his criminal investigation.  After waiving his
Miranda rights, appellant told Detective Montemayor that he was not the driver
of the white truck. Appellant was later arrested and charged with intoxication
manslaughter. 








At trial, a number of witnesses testified that there were
two Hispanic males in the white truck involved in the fatal collision. 
However, only one witness, Earl Freeman, was able to identify appellant as the
driver of the white truck.[1] 
Nurse Cates also testified that appellant told her he was the driver of the
white truck.  Appellant then sought to introduce his statements made to
Detective Montemayor that he was not the driver.  The trial court excluded
those statements.

The jury found appellant guilty of intoxication
manslaughter[2]
and assessed punishment at 14 years confinement in prison and a $10,000 fine. 
In his two points of error, appellant argues that (1) the trial court erred in
admitting the translated statements made to Nurse Cates because Moreno was not
fluent in Spanish, thereby rendering the statements unreliable; and (2) the
trial court erred in excluding appellant=s statements made to
Detective Montemayor because they were admissible under the rule of optional
completeness to explain appellant=s previous
statements to Nurse Cates.  

II.  ANALYSIS

A.  Standard of Review 

We review a decision admitting or excluding evidence under
an abuse of discretion standard.  See Osbourn v. State, 92 S.W.3d 531,
537-38 (Tex. Crim. App. 2002); Angleton v. State, 971 S.W.2d 65, 67
(Tex. Crim. App. 1998).  We will reverse the trial court only if the ruling is
outside the zone of reasonable disagreement.  Montgomery v. State, 810
S.W.2d 372, 391 (Tex. Crim. App. 1990) (op. on reh=g).  We must view
the evidence in the light most favorable to the trial court=s ruling, giving
the trial court deference on its findings of historical facts that are
supported by the record.  Guzman v. State, 955 S.W.2d 85, 89 (Tex. Crim.
App. 1997).    If the evidence exists supporting the decision to admit
evidence, there is no abuse, and we must defer to that decision.  Osbourn,
92 S.W.3d at 538. 








B.  Reliability of Translated Statement

In appellant=s first point of
error, he argues that the translated statements made to Nurse Cates were
unreliable because Moreno was not fluent in Spanish.  To support this argument,
appellant relies on the testimony of Nurse Cates and Moreno.  Nurse Cates
testified that she did not speak Spanish and had to rely on Moreno to translate
appellant=s statements.  Moreno testified that he did not speak
Spanish fluently and primarily spoke English at home.  Moreno also testified
that he had no specific memory of appellant and could not say whether what he
told Nurse Cates was accurate.  According to appellant, Moreno=s limited fluency
in Spanish rendered appellant=s statements to Nurse Cates unreliable.

Texas allows admission of translated testimony in
appropriate circumstances assuring its reliability, on the theory that the
interpreter serves as an agent of, or a language conduit for, the declarant.  See
Gomez v. State, 49 S.W.3d 456, 459-60 (Tex. App.CHouston [1st
Dist.] 2001, pet. ref=d).  In determining whether the
interpreter=s statements should be attributed to the defendant
either under the agency or conduit theory, Texas courts have utilized the
following factors listed in United States v. Nazemian, 948 F.2d 522, 527
(9th Cir. 1991): (1) which party supplied the interpreter; (2) whether the
interpreter had any motive to mislead or distort; (3) the interpreter=s qualifications
and language skill; and (4) whether actions taken subsequent to the
conversation were consistent with the statements as translated.  See United
States v. Martinez-Gaytan, 213 F.3d 890, 892-93 (5th Cir. 2000); Gomez,
49 S.W.3d at 459-60.  








In this case, neither party Asupplied@ Moreno as an
interpreter; rather, he was a security officer who was employed by Hermann
Memorial Fort Bend and assisted the nurses in communicating with
Spanish-speaking patients.  Also, it can be inferred from the record that
appellant acquiesced to Moreno=s acting as interpreter.  See Gomez,
49 S.W.3d at 460.  Second, appellant does not dispute that there is no evidence
in the record of any motive Moreno might have had to mislead Nurse Cates or
distort what was being said between Nurse Cates and appellant.  Id.

Third, the record shows that while Moreno may not be a
certified translator, he was qualified to translate the particular information
at issue in the instant case.   At trial, Moreno testified that (1) he was
frequently used to translate for English-speaking nurses who could not
communicate with Spanish-speaking patients, (2) he did not have problems
communicating with Spanish-speaking patients, (3) he was able to effectively
communicate with appellant regarding the particular information he translated,
and (4) he had translated the identical information to numerous
Spanish-speaking patients previously.  Nurse Cates testified that she had
previously used Moreno a number of times in the five years she was employed at
the hospital to translate the same information to other Spanish-speaking
patients.  Nurse Cates also testified that appellant appeared to understand
Moreno.  Appellant did not assert or point to any evidence indicating that
Moreno=s translation was
inaccurate at the time it occurred.  See id.  This evidence is
sufficient to show that Moreno possessed enough fluency in Spanish to carry on
conversation with appellant regarding the particular statements at issue. 
Appellee also presented evidence that appellant spoke Abroken English@ and was able to
answer some of Nurse Cates= questions without a translator. 
Moreover, Moreno was present at trial and subject to cross-examination, which
supports the admissibility of the translated statement.  See id.; see
also Martinez-Gaytan, 213 F.3d at 893 (holding that the absence of the
interpreter from a suppression hearing or trial so that his testimony or
translation is subject to cross-examination renders the translated statement
unreliable and inadmissible).   

Appellant argues that the translated statement is
inadmissible based on Moreno=s failure to specifically remember
translating that appellant was driving the white truck.  However, whether
Moreno remembers the specific substance of the translation at trial is not
determinative of the statement=s admissibility.  See Gomez, 49
S.W.2d at 461. (any discrepancy in testimony goes only to the weight of
evidence and not its admissibility).  The fourth Nazemian factor,
whether subsequent actions were consistent with the translated statements, is
not directly applicable here.  We do note, however, that Nurse Cates= account of the
accident and testimony that appellant was the driver is consistent with the
eye-witness testimony presented at trial, while Detective Montemayor=s account of
events through appellant=s second statement directly contradicts
eye-witness testimony.[3]  


Viewing the evidence in the light most favorable to the
trial court=s ruling and giving the trial court deference on its
findings supported by the record, we find that the trial court did not abuse
its discretion in admitting appellant=s translated
statement to Nurse Cates.  We overrule appellant=s first point of
error.

C.  Rule of Optional Completeness and Defendant=s Exculpatory
Statements

In appellant=s second point of
error, he argues that the trial court erred in excluding appellant=s statements made to
Detective Montemayor because they were admissible under the rule of optional
completeness to explain appellant=s previous
statements to Nurse Cates.  Rule 107 is properly invoked when an opposing party
reads part, but not all, of a statement into evidence.  Livingston v. State,
739 S.W.2d 311, 331-32 (Tex. Crim. App. 1987); Araiza v. State, 929
S.W.2d 552, 555-56 (Tex. App.CSan Antonio 1996, pet. ref=d).  In such a
case, the remainder of the statement Aon the same
subject@ is admissible to Areduce the
possibility of the fact finder receiving a false impression.@  Livingston,
739 S.W.2d at 331-32; Araiza, 929 S.W.2d at 555-56; Roman v. State,
503 S.W.2d 252, 253 (Tex. Crim. App. 1974). 








In the instant case, in order to invoke the rule of
optional completeness appellant must show that the portion of the statement he
seeks to admit is part of the same statement previously admitted by the
opposing party.  See Livingston, 739 S.W.2d at 331-32. Appellant=s statement to
Detective Montemayor was not part of his statement to Nurse Cates; the 
statement to nurse Cates and the statement to Detective Montemayor were 
separate and independent.  Furthermore, the statement given to Nurse Cates was
for the purpose of medical assessment, while the statement made to Detective
Montemayor was for the purpose of a criminal investigation.  It is improper to
rely upon the authority of this rule for the introduction of a separate and
independent statement taken at two different periods of time and for two
different purposes.  See id.   Therefore, the rule of optional
completeness has no application in this case.  








Additionally, when the accused does not
take the stand, self-serving statements are ordinarily inadmissible where they
merely contradict some declaration first proferred by the prosecution.  There
are certain exceptions, such as (1) part of the res gestae of the offense or
arrest, (2) part of the statement or conversation previously proved by the
State, or (3) necessary to explain or contradict acts or declarations first
offered by the State.  Singletary v. State, 509 S.W.2d 572, 576 (Tex.
Crim. App. 1974); Jones v. State, 963 S.W.2d 177, 182  (Tex. App.CFort Worth 1998,
pet. ref=d).  Appellant makes no contention that his statements were part of the
res gestae of the offense.  As discussed above, appellant=s statement to
Detective Montemayor was not previously proferred by the State.  The statement
to Nurse Cates and the statement to Detective Montemayor are two separate
statements, and the record does not show that the State offered appellant=s statements made
to Detective Montemayor.  Therefore appellant is unable prove the second
exception.  See Allridge v. State, 762 S.W.2d 146, 153 (Tex. Crim. App.
1988), cert. denied, 489 U.S. 1040 (1989).  Lastly, there is no showing
that the statements made to Detective Montemayor were necessary to correct a
false or incorrect impression created by appellant=s statements to
Nurse Cates. The fact that exculpatory or explanatory testimony favoring
appellant was not presented by the State=s case-in-chief does not equate to misleading the jury or leaving the
jury with only a partial or incomplete version of the facts.  Id. 
Appellant did not testify in this case; therefore, no opportunity was provided
to cross-examine him on his statement to Detective Montemayor.  To admit such
self-serving hearsay into evidence would allow any defendant to place his
version of the facts before the jury without being subject to cross
examination.  We therefore hold that appellant=s self-serving
statement to Detective Montemayor does not fall within the rule of optional
completeness.  Accordingly, we conclude that the trial court did not abuse its
discretion in excluding the self-serving statements made to Detective
Montemayor.  We overrule appellant=s final point of error.

We affirm the trial court=s judgment.   

 

 

 

 

/s/      Adele
Hedges

Chief
Justice

 

 

 

 

Judgment rendered and Memorandum Opinion filed October 23, 2007.

Panel consists of Chief Justice Hedges and Justices Anderson and
Seymore.

Do Not Publish C Tex. R. App. P. 47.2(b).

 

 









[1]  Appellant attempted to impeach Freeman=s testimony by presenting evidence that Freeman gave a
false last name to the police at the scene of the accident.  Freeman testified
that he later told police he had given a false last name because he had an
outstanding traffic ticket. 





[2]  A person commits the offense of intoxication
manslaughter if the person: (1) operates a motor vehicle in a public place; 
(2) was intoxicated; and (3) by reason of that intoxication caused the death of
another by accident or mistake.  See Tex.
Penal Code Ann. ' 49.08 (Vernon 2003).  

 





[3]  One
eye-witness testified that appellant was the driver, and the majority of
eye-witnesses testified that there were two Hispanic males in the white truck,
while appellant told Detective Montemayor there were three men in the truck. 
Appellee also presented evidence that the white truck belonged to appellant=s employer.  However, appellant told Detective
Montemayor that he did not know the driver of the white truck and had by chance
asked the driver for a ride on the day of the accident.