**Nemecio CARMONA, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 602–84.

Court of Criminal Appeals of Texas, En Banc.

July 10, 1985.

Robert J. Kuhn, Austin, for appellant.

Ronald Earle, Dist. Atty. and Rosemary Lehmberg, Asst. Dist. Atty., Austin, Robert Huttash, State's Atty., Austin, for appellee.

OPINION ON APPELLANT'S PETITION
FOR DISCRETIONARY REVIEW

CAMPBELL, Judge.

Appellant was convicted for the felony offense of aggravated kidnapping. V.T. C.A. Penal Code, § 20.04(a)(4). The jury assessed punishment at twenty-five years confinement in the Texas Department of Corrections. The Texarkana Court of Appeals affirmed his conviction in a published opinion. *Carmona v. State*, 670 S.W.2d 695 (Tex.App.—Texarkana 1984). We granted appellant's petition for discretionary review to determine whether the court of appeals erred in three respects.

Specifically, appellant alleges that the trial court reversibly erred in admitting, over his objection, grand jury testimony of a non-testifying witness; that the trial court reversibly erred in limiting appellant's cross-examination of a material witness; and that the trial court should have granted appellant's motion for new trial based upon the State's failure to disclose favorable material to the appellant. We disagree and will affirm.

Due to the nature of appellant's grounds for review, a detailed rendition of the facts as established at trial is necessary.

On June 27, 1980, sixteen year old Elaine McQuistion disappeared while riding her bicycle in far north Austin. Her mangled bicycle was found the following day with her purse still attached. Otherwise, there was no trace of Elaine. In early August a badly decomposed body was found near Waco. It was subsequently determined to be that of Elaine McQuistion. Due to the condition of the body, the coroner could not determine whether McQuistion had been raped and could only determine that she had been shot in the head.

In November, 1980, Joe Garcia, thirteen years of age, and Carlos Marin, fifteen years of age, were arrested for the abduction, rape, and murder of Elaine McQuistion. Both juveniles were granted transactional immunity. Both juveniles implicated appellant, aged seventeen, along with three

other youths ranging in age from fifteen to seventeen.

Garcia and Marin both repeatedly changed their stories, admitted lying to police, the district attorney's office, and the grand jury on numerous occasions. However, one theme remained constant from the time of their arrest in November, 1980, through the trial in April, 1981—that appellant, Garcia, Marin, and three co-defendants abducted, raped, and murdered Elaine and left her body near Waco. While the basic story remained the same, details were repeatedly changed.

At trial, Garcia testified that on the morning of June 27, 1980, appellant was driving his car on Middle Fiskville Road with Garcia, Marin, Ruben Tello, and Faustino Gonzales as passengers. Elaine was spotted by the co-defendants riding her bicycle. They accosted Elaine and threw her in the car. Tello and Marin then each raped her. They drove to appellant's home and alternately raped her. At some point, while Tello was attempting to rape Elaine, she kicked him; he became enraged and choked her, at which point she was "knocked out" and didn't appear to be breathing. According to Garcia, her body was then left in a field in north Austin. Later that same evening the co-defendants met again (apparently by chance) at a pool hall. Ultimately the body of Elaine McQuistion was picked up and driven to a field near Waco. Appellant and Tello took the body out to the field, a gunshot was heard, appellant and Tello returned and the perpetrators returned to Austin.

At the time of trial Carlos Marin was unavailable to testify and only Joe Garcia testified. Appellant, Tello, Gonzales, and Riojas were tried jointly. Other than Joe Garcia, the State's evidence connecting appellant to the offense was a woman who thought she had seen Elaine McQuistion on her bicycle on the date of the abduction, surrounded by four or five Mexican-American males. The woman further testified that appellant was about the same size as one of the people she had seen surrounding Elaine, but she could not positively identify

any of the defendants. Finally, an examination of appellant's car disclosed two hairs in the back seat which, upon examination, appeared to be similar to that of Elaine McQuistion.

In his third ground for review appellant challenges the trial court's limitation of his cross-examination of Joe Garcia. Appellant contends that the trial court reversibly erred in not allowing him to question Garcia regarding a pending burglary charge, violating the dictates of *Davis v. Alaska*, 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974). When appellant made his formal bill of exception, Garcia denied knowledge of any pending burglary charge. Appellant then called Scott Lyford, an assistant district attorney, whose responsibility included juvenile prosecutions, as a witness. Mr. Lyford testified that indeed Garcia did have a pending charge of burglary which was not dismissed until after appellant's trial was concluded.

■ The court of appeals held that the evidence of the pending charge was inadmissible under Art. 38.29, V.A.C.C.P. We believe the court of appeals erred in failing to distinguish between the impeaching of a witness through final felony convictions and the right to show motive and bias through pending criminal charges. The court of appeals points to the fact that Garcia's burglary charge was dismissed *after* trial as support for its position that the charge could not be used to impeach Garcia. However, it is the act of dismissal after Garcia testified that further buttresses the inference that the charge was kept pending as an incentive for Garcia to testify in the State's behalf. While we agree with the appellant that the court of appeals incorrectly analyzed this ground for review, we nonetheless find no reversible error in the trial court's limitation of cross-examination, *in this limited fact situation*. There can be no question but that cross-examination on pending charges in order to establish motive or bias is generally an exception to the rule established in Art. 38.29 V.A.C.C.P. that a witness may only be impeached with final convictions.

See *Parker v. State,* 657 S.W.2d 137 (Tex. Cr.App.1983).

■ As noted ante appellant alleges the trial court's action deprived him of the right to effectively cross-examine Joe Garcia in contravention of *Davis v. Alaska,* supra. After thoroughly reviewing the entire record in this cause and weighing the precedents, we disagree.

In *Davis v. Alaska,* supra, the Supreme Court held that refusing to permit a defendant to cross-examine the material witness against him as to motive and bias for testifying deprives a defendant of his Sixth Amendment right to confrontation. In *Davis,* the defendant sought to show that his primary accuser was on juvenile probation and therefore had a motive for directing attention away from himself as a possible suspect and in fully cooperating with the police. The witness was a juvenile and the State alleged that the interest in keeping juvenile adjudications private outweighed any interest of a defendant in impeaching a witness. The Supreme Court found that such limitation on the right to cross-examination is "constitutional error of the first magnitude and no amount of showing of want of prejudice would cure it." *Davis,* supra, 415 U.S. at 315, 94 S.Ct. at 1109. Germane to the disposition of the instant case, however, the Court noted that the State's policy interest would have to yield to "so vital a constitutional right as the *effective cross-examination* for bias of an adverse witness." *Davis,* supra, 415 U.S. at 319, 94 S.Ct. at 1112, 39 L.Ed.2d at 321 [emphasis added]. The Supreme Court in dicta has recently reiterated that no showing of harm is necessary when a defendant is deprived of an *effective cross-examination.* *United States v. Cronic,* 466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984). *See* n. 26. [emphasis added].

*Davis,* supra, has its roots primarily in *Alford v. United States,* 282 U.S. 687, 51 S.Ct. 218, 75 L.Ed. 624 (1931). In *Alford,* supra, the Supreme Court first addressed the issue of the right to cross-examine a witness and establish a motive or bias for testifying. The defendant in *Alford*

sought to ask the witness where he was residing in order to establish that the witness was in federal custody and therefore might expect some leniency from the prosecution in exchange for his testimony. In holding that the defendant was entitled to so cross-examine a witness, the Court emphasized that reasonable latitude be afforded the cross-examiner and that the confrontation clause protects the opportunity to cross-examine a witness as to possible motive or bias.

The State relies on *Garza v. State,* 532 S.W.2d 624 (Tex.Cr.App.1976) for the proposition that since appellant failed to show that the State was *actually* using the pending charge as leverage, it was not error for the trial court to limit cross-examination. The State's reliance is misplaced for several reasons: first, this Court's discussion in *Garza* regarding this ground for review is obiter dicta. The *Garza* Court found that the appellant had waived any error by abandoning his attempt to cross-examine on the prohibited area after a motion in limine had been granted. Secondly, the *Garza* Court in dicta relied on a Fifth Circuit Court of Appeals case in noting that pending charges must be shown to have been actually used as leverage, thereby distinguishing *Davis.* We note however, that the case used to distinguish *Davis* is *Luna v. Beto,* 395 F.2d 35 (5th Cir.1968), *cert. den.* 394 U.S. 966, 89 S.Ct. 1310, 22 L.Ed.2d 568 (1969) which *predates Davis,* supra, by five years. Thirdly, in *Luna,* supra, the Fifth Circuit specifically stated that the defendant had failed to inform the trial court that he sought to elicit the questioned testimony in order to show motive or bias, which that Court acknowledged would be permissible under Texas law. *See Luna,* supra, 395 F.2d at 38–39.

■ The penultimate question presented is whether *Davis v. Alaska,* supra, and its progeny, present the bench and bar with a per se rule mandating reversal of a conviction in every case wherein a trial court has limited or prevented cross examination into the area of unadjudicated juvenile offenses? We believe the correct answer is

no, because we believe that the rationale employed by the Supreme Court is that no criminal defendant be denied an *effective cross-examination.*

We find support for this proposition in that *Davis,* supra, is limited by its facts. The opinion in *Davis* is replete with references to "on the facts of this case", "in this setting", and other such references which indicate that Joshaway Davis was denied the right of *effective cross-examination.*

In *Davis,* the defendant was completely deprived of the opportunity to develop his theory of the witness' bias or motive for testifying. In the case sub judice, as we shall observe post, the witness Garcia was thoroughly cross-examined on his involvement in this crime, unlike the witness in *Davis.*

Appellant additionally relies on *Simmons v. State,* 548 S.W.2d 386 (Tex.Cr. App.1977) and *Evans v. State,* 519 S.W.2d 868 (Tex.Cr.App.1975). We find both those cases to be distinguishable on their facts and instead find that this case is controlled by *Saunders v. State,* 572 S.W.2d 944 (Tex. Cr.App.1978). In both *Evans,* supra, and *Simmons,* supra, the defendant was deprived of the opportunity to offer *any* testimony regarding possible motive or bias in testifying for the State.

*Saunders,* supra, involved the prosecution of a murder for hire. The State's main witness was the person allegedly solicited to commit the murder. The witness was working as an undercover informer for the police. Cross-examination revealed that the witness was a thief and made his living at various times by stealing or pool hustling; it was shown that the witness had been paid by the federal government to relocate. The witness admitted to having been incarcerated in the New Mexico State Penitentiary three times and in an army barracks as well. He was at the time of trial on probation and had also, since his last release from the penitentiary, been convicted of robbery and burglary. The witness had been living undercover and his place of residence was kept confidential for his safety. As in *Alford,* supra the defend-

ant sought to establish where the witness was living. The defendant argued that he had a constitutional right to ask a witness where he lived and to place him in his community and establish any possible motive or bias in testifying for the State. This Court held that *Alford* did not establish a right to ask a particular type of question, but rather the right to *effective cross-examination* generally. The trial judge may properly limit cross-examination to exclude inquiry as to the town in which the witness resides so long as the defendant is not denied a thorough and effective cross-examination. *Saunders,* supra, at 949.

The cross-examination of Joe Garcia took well over a day and a half. Garcia was cross-examined not by one defense attorney, but by four. Throughout both direct and cross-examination the jury was repeatedly informed of the fact that Garcia was testifying under a grant of immunity. There was no question but that he had in fact been offered and had accepted great leniency on the part of the State in exchange for his favorable testimony. Additionally, the examination of Garcia revealed a chilling picture of a thirteen year old who had been sniffing glue since the age of four, extensively engaged in both drug and alcohol abuse including the repeated use of LSD, and admitted prior entanglements with the law, including shoplifting and including the careful cultivation of his own marihuana patch. Garcia openly admitted to having committed aggravated perjury before a Travis County grand jury, an offense from which Garcia was not immune. In sum, Garcia's testimony vividly portrayed the life of an habitual juvenile miscreant.

▪ We hold that the principle of *Davis v. Alaska* is not offended when a defendant is prohibited from asking a witness about an unrelated pending charge, provided that the defendant has otherwise been afforded a *thorough and effective* cross-examination and where, as here, the bias and prejudice of the witness is so patently obvious.

Ground for review number three is overruled.

 In a closely related ground for review, appellant alleges that the State violated the judge's discovery order in failing to inform the defense of the pending burglary charge against Joe Garcia. Given our disposition of ground for review three, any error by the State in failing to disclose this information was harmless. Failure to effectuate discovery will not result in reversible error unless it can be shown that the evidence withheld would have affected the outcome of the trial in the defendant's favor. *Quiniones v. State*, 592 S.W.2d 933 (Tex.Cr.App.1980) and cases cited therein. This Court in *Quinones*, supra, emphasized that, unless a defendant was deprived of a fair trial due to the State's omission, there would be no error. See also *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963); *United States v. Agurs*, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976). Having held that the trial judge did not abuse his discretion in refusing to permit cross-examination on the pending charge, we cannot say that the failure of the State to disclose the same information is reversible error under these facts. Furthermore we note that the record indicates that the defense was in fact aware of the pending charges. When the attorney for appellant attempted to cross-examine on the pending burglary, see infra, he in no way indicated that he was not aware of the pending charge. During the hearing on the motion for new trial and the making of the bill of exception on this issue, appellant's attorney questioned the juvenile prosecutor regarding a conversation between the prosecutor, and defense counsel during the trial about the pending charge. This Court has held that if the facts not disclosed are known by the defendant or his counsel, he cannot object on appeal to the failure of the State to disclose the same. *Harris v. State*, 453 S.W.2d 838 (Tex.Cr.App.1970). Ground for review number five is overruled.

 In his first ground for review appellant objects to the trial court's refusal to delete Carlos Marin's grand jury testimony from evidence. Carlos Marin was an admitted co-participant who had been granted immunity in exchange for his testimony. On the Friday before trial began, Marin was involved in a motorcycle accident and remained hospitalized throughout trial; he was therefore unavailable to testify. During cross-examination by Attorney Fitzgerald (representing Defendant Faustino Gonzales) of Joe Garcia, Fitzgerald offered into evidence defendant's exhibit 10, which is a transcript of Garcia's grand jury testimony. There was no objection. All parties seem to agree that the exhibit containing Garcia's testimony also contained Marin's testimony and that no one intended for Marin's testimony to be admitted into evidence.

Appellant argues that he objected to Marin's testimony being in evidence at the first opportunity he had and that therefore the error is preserved. We must disagree. The record affirmatively shows that at the close of its case the *State* moved to delete the offending transcript; a discussion was had off the record and upon returning to the record the State's motion to delete the transcript was not ruled upon. Even assuming that appellant is correct in his statement that he did not know the exhibit contained Marin's testimony, we find that appellant's first opportunity to properly object was when the state moved to exclude the offending transcript. Having failed to object at that time, appellant has waived any error. Ground for review number one is overruled.

The judgment of the court of appeals is affirmed.

ONION, P.J., concurs.

TEAGUE, J., dissents.

MILLER, J., dissents to grounds for review Nos. 1 and 3.

### DISSENTING OPINION ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

CLINTON, Judge.

The ultimate issue the Supreme Court granted certiorari to consider in *Davis v.*

*Alaska,* 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974), was as follows:

"[W]hether the Confrontation Clause requires that a defendant in a criminal case be allowed to impeach the credibility of a prosecuting witness by cross-examination directed at *possible bias deriving from the witness' probationary status as a juvenile delinquent* when such impeachment would conflict with a State's asserted interest in preserving the confidentiality of juvenile adjudications of delinquency."

*Id.,* U.S. at 309,[1] 94 S.Ct. at 1107. Through a misreading of *Davis v. Alaska,* hereafter *Davis,* the majority opinion would have this Court find that "the rationale employed by the Supreme Court is that no criminal defendant be denied an *effective cross-examination,*"[2] and thereby fall into practically the same constitutional error the Supreme Court found Alaska had committed in *Davis.*

Counsel for Joshaway Davis had made clear to the trial court that "he would *not* introduce Green's juvenile record as a *general impeachment* of Green's character as a truthful person but rather, to show specifically that at the same time Green was assisting the police in identifying petitioner he was on probation for burglary. From this petitioner would seek to show—or at least argue—that Green acted out of *fear or concern of possible jeopardy to his probation.* * * * Green's record would be revealed *only as necessary to probe Green for bias and prejudice and not generally to call Green's good character into question." Id.,* U.S. at 311, 94 S.Ct. at 1108. The Supreme Court then notes that, prevented by an adverse ruling of the trial court from revealing that juvenile record, counsel for Davis "did his best to expose Green's state of mind" at the relevant time, excerpts part of his cross-examination of

Green, and concludes, "It would be difficult to conceive of a situation more clearly illustrating the need for cross-examination." *Id.,* U.S. at 312–314, 94 S.Ct. at 1108–09.

On appeal, however, the Alaska Supreme Court concluded it need not resolve the potential conflict between "right to a meaningful confrontation with adverse witnesses and the State's interest in protecting the anonymity of a juvenile offender" because, much as the majority wants this Court to say, "our reading of the trial transcript convinces us that counsel for the defendant was able *adequately* to question the youth in considerable detail concerning the possibility of bias or motive." *Id.,* U.S. at 314–315, 94 S.Ct. at 1109–1110.

Therefore, the Supreme Court perceived that "the essential question turns on the correctness of the Alaska court's evaluation of the 'adequacy' of the scope of cross-examination permitted," and immediately announced, "We disagree with that court's *interpretation of the Confrontation Clause* and we reverse." *Id.,* U.S. at 315, 94 S.Ct. at 1110.[3]

"The accuracy and truthfulness of Green's testimony were key elements in the State's case against petitioner. *The claim of bias which the defense sought to develop* was admissible to afford a basis for an inference of undue pressure because of Green's *vulnerable status as a probationer ...*" The "adequacy" conclusion of the Alaska Supreme Court is constitutionally unacceptable: "While counsel was permitted to ask Green *whether* he was biased, counsel was unable to make a record from which to argue *why* Green might have been biased *or* otherwise lacked that degree of impartiality expected of a wit-

---

1. All emphasis is mine throughout unless otherwise indicated.

2. Emphasis added in majority opinion.

3. Thus belied is the theme of the majority that *Davis* is "limited by its facts." Given that at issue was an adverse ruling by the trial court

preventing counsel for Davis from introducing Green's juvenile record, the "adequacy" determination by the Alaska Supreme Court elevated that issue to constitutional heights. Manifestly, the Supreme Court did not grant certiorari to decide a constitutional question with an answer that is limited to the facts of that case.

ness at trial."[4] "[I]t seems clear ... that to make *any such inquiry effective,* defense counsel should have been permitted to expose to the jurors the facts from which jurors ... could appropriately draw inferences relating to the reliability of the witness." Since he was not Davis "was *thus denied* the right to effective cross-examination ..."—"constitutional error of the first magnitude and no amount of showing of want of prejudice would cure it." *Id.,* U.S. at 318–319, 94 S.Ct. at 1111.

Turning to address the State's interest "in protecting the anonymity of juvenile offenders," and acknowledging without challenge that interest "as a matter of its own policy," the Supreme Court again pointed out that "petitioner sought to introduce evidence of Green's probation for the purpose of suggesting that Green was biased and, therefore, that his testimony was either not to be believed ... or at least very carefully considered in that light." Given the potential damage to the strength of the State's case, the Supreme Court concluded that "the right of confrontation is paramount to the State's policy of protecting a juvenile offender." *Id.,* at 319, 94 S.Ct. at 1112.

After discussing a part of *Alford v. United States,* 282 U.S. 687, 51 S.Ct. 218, 75 L.Ed. 624 (1931), to bolster its conclusion in that regard, the Supreme Court summed up, *viz:*

> "The State's policy interest in protecting the confidentiality of a juvenile offender's record cannot require yielding of so vital a right as *the effective cross-examination for bias* of an adverse witness. The State could have protected Green *from exposure of his juvenile adjudication* in these circumstances by refraining from using him to make out its case; the State cannot, consistent with the right of confrontation, require the petitioner to bear the full burden of vindicating the State's interest in the secrecy of juvenile records."

*Id.,* 415 U.S. at 319–320, 94 S.Ct. at 1112. Accordingly, the judgments were reversed

and the cause remanded for further proceedings "not inconsistent with this opinion."

When *Davis* is read carefully in its entirety, merely substituting "effective" for "adequate" will not conform to its teaching. Purported distinctions made by the majority cannot withstand rational scrutiny. The lesson of *Davis* is for crossexamination of a juvenile witness with some character of a juvenile record to be "effective" an accused is constitutionally entitled to expose to the jury that fact and others related to it so that jurors, "as the sole triers of fact and credibility, could appropriately draw inferences relating to the reliability of the witness." *Id.,* 415 U.S. at 319, 94 S.Ct. at 1112. See, e.g., *Parker v. State,* 657 S.W.2d 137 (Tex.Cr.App.1983); *Harris v. State,* 642 S.W.2d 471 (Tex.Cr. App.1982).

I respectfully dissent.

---

**4.** Original emphasis by Supreme Court.