Opinion issued July 11, 2002





 







In The

Court of Appeals

For The

First District of Texas






NO. 01-00-00504-CR






ALEJANDRO DAVALOS LOZA, Appellant


V.


THE STATE OF TEXAS, Appellee






On Appeal from the 182nd District Court

Harris County, Texas

Trial Court Cause No. 807313






O P I N I O N

 A jury found appellant, Alejandro Davalos Loza, guilty of murder and assessed
punishment at 60 years in prison and a $5,000 fine. Appellant claims he is entitled
to a new trial because (1) the State failed to disclose favorable evidence, and (2) his
counsel was ineffective. We affirm.

Background

 Enrique Villalobos, the complainant, was killed on March 7, 1999, in Houston. 
He was shot in the back with a sawed-off shotgun at close range. Appellant conceded
that he fired a shot into the complainant's car, but argued this was done in
self-defense or in the defense of his friend.

 Villalobos left a "La Primera" gang party along with seven other people in his
car. Another person drove because Villalobos was too drunk to drive. After a brief
visit to the Galleria waterwall, the group went and cruised along the Richmond
Avenue night club strip until about 4:30 a.m. They eventually left the Richmond strip
to take Villalobos to his apartment in southwest Houston. When they reached the
apartment complex, a minivan was blocking the entrance, and a passenger was being
dropped off. Someone in the complainant's car made some gang-related hand
gestures towards the minivan. Although disputed by the State's witnesses, appellant
testified that someone in the car pointed a gun at his friend Nieto. Nieto became
angry, and he and appellant began to chase the car in the minivan. Appellant was in
the front passenger seat of the minivan, and Nieto was driving. Both appellant and
Nieto were members of the Cholos, a gang in violent conflict with La Primera. 

 During the chase, appellant leaned out the window with a sawed-off 12-gauge
shotgun in his hands. He fired at the car and missed, but the car's driver lost control
and crashed into a ditch while trying to make a lefthand turn. The minivan parked
behind the crashed car to prevent it from leaving. 

 Exactly what happened after the crash was disputed at trial. According to the
State's witnesses, Nieto got out and began beating on the car windows commanding
the occupants to roll down the windows. The driver of the car locked the doors and
windows. Appellant was standing behind Nieto pointing the sawed-off shotgun at the
disabled car and the people inside it. Appellant and Nieto then went around to the
passenger side of the car. Because the driver's side door was damaged in the wreck
and could not be opened properly, the driver crawled over Villalobos and another
passenger and got out through the front passenger door. He tried to calm the two
men, but Nieto punched him in the face and began to beat him. Appellant pumped
the sawed-off shotgun one time, pointed it at the driver of the car, and then went over
to the car. The driver of the car managed to run away. Nieto turned his attention to
the remaining passengers inside the car, threatened to kill them, and attempted to pull
one of the girls out by her hair. Nieto then began to beat Villalobos with his fists. 
Villalobos hit the driver with a flashlight. Appellant asked a bloody Neito who had
hit him and then leaned in through the car window and shot Villalobos in the back. 
Nieto and appellant then ran back to the minivan and drove off. The remaining
occupants of the car pushed it out of the ditch and drove Villalobos to a hospital,
where he was later pronounced dead. 

 Appellant, on the other hand, testified he was in the minivan when Nieto
approached the car. Someone from the car punched Nieto in the nose and was
holding a handgun. Appellant then left the minivan with the shotgun. Nieto was still
fighting with someone and yelled at appellant to shoot. Appellant admitted he fired
the shotgun once into the crowded car at close range. He testified he was not aiming
and did not know if he had hit anyone. Appellant and Nieto then drove away from
the scene. They went to a bar that was their gang's hangout. There, Nieto waved the
gun around outside and bragged about what the two had done.

Failure to Disclose Impeachment Evidence 

 In his first point of error, appellant contends that his Due Process and
Confrontation Clause rights under the United States Constitution and the Texas
Constitution were violated when the State failed to disclose that one of its material
witnesses had juvenile theft charges pending against her. The State has an affirmative
duty to disclose evidence favorable and material to a defendant's guilt or punishment
under the Due Process Clause of the Fourteenth Amendment. Thomas v. State, 841
S.W.2d 399, 407 (Tex. Crim. App. 1992) (citing Brady v. Maryland, 373 U.S. 83,
87-88, 83 S. Ct. 1194, 1197 (1963)). Such rights are equally applicable under the due
course of law provision in Article I, § 19 of the Texas Constitution. Ex parte Adams,
768 S.W.2d 281, 293 (Tex. Crim. App. 1989). 

 Additionally, appellant cites to Davis v. Alaska to assert that his constitutional
right to effectively confront witnesses was violated. 415 U.S. 308, 94 S. Ct. 1105
(1974). In Davis, the United States Supreme Court faced the question of whether a
defendant's rights under the Sixth Amendment's Confrontation Clause could trump
a state's interest in keeping juvenile records confidential. Davis, 415 U.S. at 309, 94
S. Ct. at 1107. The Supreme Court held that, under the specific facts presented,
Davis's confrontation rights would be violated if he could not show the potential bias 
of the juvenile witness against him. Davis, 415 U.S. at 319, 94 S. Ct. at 1112; see
Carmona v. State, 698 S.W.2d 100, 103-104 (Tex. Crim. App. 1985) (discussing
Davis and noting that the case was limited by its facts). 

 In both Davis and Carmona, a Court of Criminal Appeals case construing
Davis, the trial courts had made specific rulings that prohibited the discussion of
juvenile crimes. If the trial court here had made such a ruling, then a direct
examination of Davis would be appropriate; however, no such ruling prohibiting the
witness from being cross-examined about her pending juvenile charge was made. 
Thus, appellant solely presents an issue for our review regarding the failure to
disclose Brady material.

 A violation of due process occurs when a prosecutor (1) fails to disclose evidence
(2) which is favorable to the accused (3) that creates a probability sufficient to
undermine the confidence in the outcome of the proceeding. Thomas, 841 S.W.2d at
404. Favorable evidence under the second prong is any evidence that, if disclosed
and used effectively, may make the difference between conviction and acquittal. Id. 
When analyzing the harm of the alleged error under the third prong, we must examine
the entire record and consider the error in the context of the overall strength of the
State's case. Id. at 404-405.

 The first Thomas prong is met because it is undisputed that the defense was not
alerted to the witness's pending juvenile charge. Yet, even assuming without
deciding that the second prong can be satisfied, the evidence clearly fails under the
third prong because of the State's very strong case against appellant, the cumulative
nature of the witness's testimony, and the limited impeachment value of the pending
charge.

 The juvenile witness in question was one of the passengers in the victim's car. 
She testified as an eyewitness to the events of the night, as did the driver of the car,
another passenger, and appellant himself. There was little variation among the State's
witnesses, and, although he contradicted some aspects of the State's case, appellant
himself testified that he fired a shot into the car at very close range, with his hands
partially inside the car. 

 The defense argued that the killing was justified as self-defense or defense of
a third person. The evidence to support self-defense or defense of a third person was
weak because appellant testified that he fired into the car without aiming at anyone
in particular rather than defending against a specific attacker. Conversely, the witness
in question provided some of appellant's better evidence for the defense of a third
person theory when she testified that the victim hit appellant's friend Nieto with a
flashlight just before the shooting. The fact that the case against appellant was very
strong and the witness's testimony was largely cumulative weighs against finding that
a violation of due process has occurred. See Thomas, 841 S.W.2d at 405; Saldivar
v. State, 980 S.W.2d 475, 486-87 (Tex. App.--Houston [14th Dist.] 1998, pet. ref'd).

 Further, appellant could not have used the pending juvenile theft charge for
general impeachment of the witness's credibility. See Tex. R. Evid. 609(d); Tex.
Fam. Code Ann. § 51.13(b) (Vernon 1996); Warren v. State, 514 S.W.2d 458, 465
(Tex. Crim. App. 1974) (holding that juvenile records could not be used for general
impeachment). Had it been disclosed, the pending charge could have only been used
for limited impeachment purposes, such as showing a motive to cooperate with the
police. See Carmona, 698 S.W.2d at 102 (discussing Davis and holding that a
witness could be confronted with pending juvenile charges to show motive and bias);
Foster v. State, 25 S.W.3d 792, 795 (Tex. App.--Waco 2000, pet. ref'd) (noting
pending juvenile charge may be admissible for limited purpose of showing motive to
testify for the State); Gilmore v. State, 871 S.W.2d 848, 851 (Tex. App.--Houston
[14th Dist.] 1994, no pet.) ("[U]nless the right of confrontation is violated as it was
in Davis, the family code rule against admission of juvenile records prevails."). 

 In sum, given the very strong case against appellant, the cumulative nature of
the witness's testimony, and the limited impeachment value of the pending charge,
we hold that the failure to disclose this evidence was not sufficient to undermine
confidence in the jury's verdict.

 We overrule appellant's first point of error. 

Ineffective Assistance of Counsel

 In his second and third points of error, appellant claims that he did not receive
effective assistance of counsel because (1) counsel did not pursue an objection to the
State's jury argument until an adverse ruling was obtained, and (2) counsel failed to
call character witnesses to testify on his behalf. There is no reporter's record from
the hearing on the motion for new trial where appellant first challenged counsel's
effectiveness. 

 We apply the usual Strickland standard of review, requiring that appellant show
both deficient performance by counsel and prejudice. Strickland v. Washington, 466
U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984); Thompson v. State, 9 S.W.3d 808, 812
(Tex. Crim. App. 1999). There is a strong presumption that counsel's conduct was
reasonable. Strickland, 466 U.S. at 689, 104 S. Ct. at 2065. A claim of ineffective
assistance of counsel must be firmly found in the record. Thompson, 9 S.W.3d at 813. 
Upon appeal, there is a strong presumption that counsel's actions fell within the range
of effective assistance. See id. We do not judge counsel's strategic decisions in
hindsight, and we strongly presume that counsel's actions were competent and
motivated by sound trial strategy. Jackson v. State, 877 S.W.2d 768, 771 (Tex. Crim.
App. 1994).

 During its closing argument, the State described appellant as "still a Southwest
Cholo at heart" and referred to the murder as an "execution." Appellant's counsel
objected to the statement, and the objection was sustained. Counsel then asked for
an instruction to disregard the comment, and the court gave such an instruction. 
Counsel did not request any further relief. Appellant now asserts that trial counsel
was ineffective for not pursuing the objection further by moving for a mistrial. 

 Whether to object at all to a portion of the State's closing argument is an
inherently tactical decision. See Taylor v. State, 947 S.W.2d 698, 704 (Tex.
App.--Fort Worth 1997, pet. ref'd). Additionally, there is, of course, no requirement
that counsel pursue every objection to an adverse ruling. The granting of a mistrial
is an extreme and uncommon remedy. Bauder v. State, 921 S.W.2d 696, 698 (Tex.
Crim. App. 1996). Generally, the law presumes that admonishments to a jury are an
effective remedy. Id. Appellant had likely received all the relief that would be
granted when the court instructed the jury to disregard the State's comment. 
Counsel's decision not to request an unlikely remedy did not render his assistance
ineffective. 

 Appellant also complains because counsel did not call certain character
witnesses at the punishment phase of trial. Whether counsel decides to call a witness
is generally a matter of trial strategy. State v. Thomas, 768 S.W.2d 335, 337 (Tex.
App.--Houston [14th Dist.] 1989, no pet.). Counsel's failure to call character
witnesses may have been based on a trial strategy, and we have nothing in the record
before us to suggest otherwise.

 We overrule appellant's second and third points of error.

 We affirm the judgment.

 


 Michael H. Schneider

 Chief Justice



Panel consists of Chief Justice Schneider and Justices Jennings and Wilson. (1) 

Do not publish. Tex. R. App. P. 47.

1. The Honorable Davie L. Wilson, retired Justice, Court of Appeals, First
District of Texas at Houston, participating by assignment.