**Opinion issued August 1, 2017**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-15-00717-CR

————————————

## DEDRIC D'SHAWN JONES, Appellant

## V.

## THE STATE OF TEXAS, Appellee

On Appeal from the 248th District Court
Harris County, Texas
Trial Court Case No. 1452040

## DISSENTING OPINION

Dedric D'Shawn Jones was indicted for assaulting his girlfriend, A. Jimenez. The key witness against him was Jimenez's mother, A. Gonzales. At the time of the assault trial, there was an ongoing Child Protective Services investigation and proceedings to terminate Jones's and Jimenez's parental rights to their daughter,

pseudonymously referred to as Alice. In his assault trial, Jones sought to examine Gonzales about her knowledge of and interest in the termination proceedings, arguing that the termination proceedings provided Gonzales with a motive to exaggerate her testimony against him to the extent she wanted to be awarded custody of Alice. The trial court denied Jones's pre-trial request to examine Gonzales about the termination proceedings, and once the evidence began Jones made an offer of proof in an effort to preserve error. But the offer of proof was substantively defective—it failed to show bias stemming from the termination proceedings. And it was procedurally defective as well—Jones failed to segregate admissible evidence from inadmissible evidence and failed to obtain a ruling on the offer of proof from the trial court. The court nevertheless holds that the trial court erred in refusing to permit Jones to examine Gonzales about the termination proceedings.

The court's analysis ponders what testimony Jones *might* have elicited from Gonzales and concludes that such speculative testimony—unpreviewed by Gonzales herself—should have provided a basis for opening cross-examination to include questions about the termination proceedings. Trial courts, facing the need to make quick rulings in the midst of trial while the jury patiently waits in the jury room, properly focus on the scope of the offered evidence and the procedures followed by the offering party. The court ignores that reality and veers off to

consider what might have been offered. In effect, the court holds that when a trial court makes a pre-trial ruling limiting the scope of cross-examination, the proponent need not make a proper offer of proof demonstrating why the ruling was error to obtain reversal on appeal, so long as he conjures up some post-hoc justification for admitting the testimony in his appellate brief. Moreover, the proponent need not even obtain a ruling on the deficient offer. That is not how our law works.

Trial courts consider the evidence actually tendered during the offer of proof, knowing that litigants often over-promise and under-deliver once required to present the proof itself. Here, the offered testimony did not demonstrate that Gonzales was any more potentially biased or prejudiced beyond what was already apparent from the admitted evidence. This offer did not establish a basis for cross-examining Gonzales about the termination proceedings to establish a bias.

While the court speculates what Jones's offer of proof might have shown, trial courts do not. They examine the actual evidence. Trial courts can refuse a narrow offer of proof that invites speculation about what a fuller examination would have revealed without concern of committing error. At least they could before today. Now trial courts must consider whether an appellate court will speculate how a party could have offered more evidence beyond the offered evidence if the trial court were to allow examination about a subject matter. To

3

engage in such speculation, the trial court will itself have to act, in effect, as an advocate for the party tendering the offer of proof to determine what else that party could have tried to show, all the while without any indication from the witness that such testimony is actually forthcoming.

Part of a trial court's analysis is also to consider whether a party has properly preserved its offer of proof. If the offer is procedurally flawed, the trial court does not need to keep the jury waiting any longer to reconsider its initial ruling and can refuse the offer without concern of committing error. At least it could before today. Now it appears not to matter whether the offering party properly segregates evidence or even obtains a ruling from the trial court; reversible error is possible even if not preserved.

The court's holding is legally incorrect. It sets forth an unworkable rule. And it will encourage the filing of meritless appeals. For these reasons, I respectfully dissent.

## Exclusion of Evidence of Bias

The court holds that the trial court violated Jones's constitutional right of confrontation by refusing to permit him to examine Gonzales about her knowledge of and interest in the CPS investigation and proceedings to terminate Jones's and Jimenez's parental rights to their daughter, Alice. After voir dire but before the presentation of any evidence, Jones asked about introducing evidence regarding the

4

CPS termination proceedings. The trial court stated that such evidence was not relevant. Jones objected.

Later, during trial, Jones called Gonzales to testify in an offer of proof. *See* TEX. R. EVID. 103(a).[1] Jones's attorney asked Gonzales whether she knew of a CPS investigation; Gonzales testified that she was aware of such an investigation but did not "have any say" in its outcome. Gonzales further testified that Alice was living with her sister (the child's great-aunt) during the trial, but that before that, she (Gonzales) had been taking care of her. Jones did not secure a ruling on the offer of proof once completed.

On appeal, Jones contends that this evidence showed that Gonzales was potentially biased against him because she had an "apparent stake in the outcome of" the CPS investigation and termination proceedings. He argues that Gonzales had a potential motive to "exaggerate her testimony" against him because that would increase the likelihood that he would be convicted, which, in turn, would increase the likelihood of his parental rights being terminated and Gonzales

---

[1] "Although the terms 'offer of proof' and 'bill of exception' are often used interchangeably, they are governed by different rules and the method of error preservation under each is different. When a trial court excludes evidence, a party may preserve error by making a timely offer of proof." *Ethridge v. State*, No. 01-10-00027-CR, 2011 WL 2502542, at *3 (Tex. App.—Houston [1st Dist.] June 23, 2011, no pet.) (mem. op., not designated for publication) (citations omitted).

ultimately being awarded custody of Alice. Therefore, his argument continues, the trial court violated his right of confrontation.

## A.     Standard of review and applicable law

The court properly sets forth the standard of review for an appellate court's review of a trial court's decision to admit or exclude evidence: an abuse of discretion. But by speculating about what evidence Jones may have been able to develop on cross-examination, the court ignores that standard.

In exercising its discretion, the trial court must consider whether limiting Jones's right to cross-examine Gonzales *based on* the offer of proof (that is, the questions and answers actually presented) denied him the right to expose a motive that would interfere with Gonzales's ability to be an impartial witness. *See Delaware v. Van Arsdall*, 475 U.S. 673, 678–79, 106 S. Ct. 1431, 1435 (1986) (recognizing that "exposure of a witness' motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination").

Because of the constitutional right of confrontation, a trial court must permit a defendant to adduce evidence that would tend to establish ill feeling, bias, motive, or animus on the part of a witness testifying against him. *Johnson v. State*, 490 S.W.3d 895, 910 (Tex. Crim. App. 2016). But the bias must create an incentive to testify favorably for the prosecution. Thus, the proponent of the evidence "must establish some causal connection or logical relationship between

6

the [source of bias] and the witness' 'vulnerable relationship' or potential bias or prejudice . . . or testimony at trial." *Carpenter v. State*, 979 S.W.2d 633, 634 (Tex. Crim. App. 1998) (holding that defendant was not entitled to impeach State's witness during cross-examination with evidence of pending federal charges against witness when testimony supporting defendant's offer of proof did "no more than establish the factual basis of the pending federal charges").

Even faced with potential bias, a trial court retains wide latitude under the Confrontation Clause to impose restrictions on cross-examination for testimony that is repetitive or only marginally relevant. *Id.* at 636 (Price, J., concurring) (citing *Van Arsdall*, 475 U.S. at 679, 106 S. Ct. at 1435). A trial court's limitation on cross-examination into a witness's bias does not exceed its discretion or violate the defendant's right to confront a witness as long as the possible bias and motive of the State's witness is already shown in the record (i.e., the testimony is repetitive) or is readily apparent. *See Carmona v. State*, 698 S.W.2d 100, 104 (Tex. Crim. App. 1985) (effective cross-examination not denied when "defendant has otherwise been afforded a thorough and effective cross-examination and . . . the bias and prejudice of the witness is . . . patently obvious"). A trial court's discretion is exceeded only when it so drastically curtails the defendant's cross-examination as to leave him unable to show why the witness might have been

7

biased or otherwise lacked the level of impartiality expected of a witness. *Johnson v. State*, 433 S.W.3d 546, 555 (Tex. Crim. App. 2014).

When a trial court excludes evidence pre-trial, that exclusion "is subject to reconsideration throughout trial . . . ." *Warner v. State*, 969 S.W.2d 1, 2 (Tex. Crim. App. 1998) (per curiam). Therefore, to preserve error, the proponent must make an offer of proof. *Id.* The proponent may claim error on appeal "only if the error affect[ed] a substantial right" of the proponent and the proponent informed the trial court "of its substance by an offer of proof, unless the substance was apparent from the context." TEX. R. EVID. 103(a)(2); *see also* TEX. R. EVID. 103(c), (d); *Mims v. State*, 434 S.W.3d 265, 271 (Tex. App.—Houston [1st Dist.] 2014, no pet.) (error preserved by "making an offer of proof that demonstrates what questions would have been asked and the expected answers to those questions").

"The primary purpose of an offer of proof is to enable an appellate court to determine whether the exclusion was erroneous and harmful." *Mays v. State*, 285 S.W.3d 884, 890 (Tex. Crim. App. 2009) (quoting Steven Goode, Olin Guy Wellborn III & M. Michael Sharlot, 1 TEXAS PRACTICE—GUIDE TO THE TEXAS RULES OF EVIDENCE: CIVIL AND CRIMINAL § 103.3 (1993)). "A secondary purpose is to permit the trial judge to reconsider his ruling in light of the actual evidence." *Holmes v. State*, 323 S.W.3d 163, 168 (Tex. Crim. App. 2009). When, as here, the offer of proof assumes a question-and-answer form, we consider that evidence—

and not the lawyer's post-hoc statements about that evidence—to determine whether the trial court's ruling was erroneous. *See* TEX. R. EVID. 103(a)(2); *Moore v. State*, 275 S.W.3d 633, 635 (Tex. App.—Beaumont 2009, no pet.) ("Absent an offer of proof or a bill of exception setting forth the evidence [the proponent] sought to introduce, nothing is presented for our review on appeal.").

**B.    The trial court did not err by excluding testimony regarding the CPS investigation**

The court holds that the trial court erred by limiting Jones's cross-examination of Gonzales to not allow questions about the termination proceedings. The only evidence of the CPS termination proceedings was through Gonzales's testimony during Jones's offer of proof.[2]

As the proponent of the evidence, Jones was required to establish, in his offer of proof, "some causal connection or logical relationship" between the excluded evidence and Gonzales's alleged bias. *See Carpenter*, 979 S.W.2d at 634. In light of Jones's theory of why the evidence was a source of potential bias, to establish the necessary causal connection or logical relationship, Jones's offer of proof was required to show that (1) Gonzales was aware of the then-pending CPS

---

[2]    Jones contends that certain evidence presented to the jury also showed that Gonzales was biased. Specifically, Jones contends that evidence that Gonzales was "highly protective" of Alice and that Gonzales had falsely testified Jimenez was a "good kid" who never got in trouble showed that Gonzales was biased against him and had a motive to exaggerate her testimony. I agree that this evidence demonstrates a potential source of bias. It is not, however, a potential bias that is *related to the CPS termination proceedings*.

termination proceedings; (2) Gonzales wanted to gain custody of Alice; and (3) Gonzales believed that she could increase her chances of gaining custody of Alice by exaggerating her testimony against Jones, possibly under the belief that Jones might lose his parental rights if convicted.

In its entirety, the portion of Jones's offer of proof addressing the CPS termination proceedings was as follows:

Q. Do you know that there's a CPS—that there's a child custody battle going on to eliminate parental rights of both [Jimenez] and [Jones]?

A. Yes, sir.

Q. Do you have an interest in that being done?

A. I don't understand what that means.

Q. Do you have a preference?

A. Do I have preference of what?

Q. That their parental rights be terminated or not?

A. I don't have any say in that. That damage has been done between the both of them.

Q. My understanding is the child is with an aunt; is that correct?

A. My sister.

Q. Your sister?

A. Yes. And before that, she was with me. I had her. I've always had her.

Q. The reason that you take care of the child is because of the relationship that [Jones] and [Jimenez] have, correct?

10

A. I'm sorry?

Q. It's because of the type of relationship that [Jimenez] and [Jones] have and the things that they do destructive towards each other, correct?

A. I'm not sure I want to answer that.

Q. The reason—

A. Yes, that's why I take care of her because I want her to be safe. She's a beautiful little girl. She deserves to be safe. (Witness crying.)

Jones's limited offer of proof failed to show that the trial court erred by excluding testimony regarding the CPS termination proceedings for two reasons. First, Jones's offer of proof did not suggest bias stemming from the CPS termination proceedings. Second, Jones's offer of proof was procedurally defective. I consider each reason in turn.

### 1. Jones's limited offer of proof did not demonstrate bias

The testimony in Jones's limited offer of proof did not show and could not have led a reasonable jury to conclude that Gonzales was biased against Jones because she wanted custody of Alice.

First, Jones did not present any evidence suggesting that Gonzales wanted custody of Alice. Nothing in the record indicates that Gonzales had requested custody of Alice or desired to take custody from either her daughter or from Alice's great-aunt (Gonzales's sister). Instead of asking her about her desire to obtain custody, the cross-examination asked whether she had an "interest" or a

11

"preference" as to whether Jones's and Jimenez's rights to Alice should be terminated. Gonzales's response was that she did not have "any say" in the outcome and that the "damage" had already "been done between" Jones and Jimenez. Gonzales further testified that, while she had previously taken care of the child, at the time of trial the child lived with Gonzales's sister. Jones offered no evidence—through examination during his offer of proof or otherwise—that Gonzales desired or was seeking custody of Alice. Similarly, there was no evidence regarding why Gonzales did not have custody at the time of trial instead of her sister. Without evidence that Gonzales actually wanted custody of Alice, Jones was unable to establish the required causal connection or logical relationship between the CPS proceedings and Gonzales's allegedly biased testimony.

Jones's failure to establish whether Gonzales actually wanted or took steps to obtain custody of Alice distinguishes this case from the two cases the court relies on, *Fox v. State*, 115 S.W.3d 550 (Tex. App.—Houston [14th Dist.] 2002, pet. ref'd), and *Ryan v. State*, No. 04-08-00594-CR, 2009 WL 2045211 (Tex. App.—San Antonio July 15, 2009, no pet.) (mem. op., not designated for publication). *Fox* and *Ryan* show that a direct interest in a child-custody dispute is a valid area for cross-examination to expose bias or potential bias. Both cases involved allegations of domestic violence. *Fox*, 115 S.W.3d at 554, 566; *Ryan*, 2009 WL 2045211, at *1, *3. In each case, the defendant-husband presented

12

evidence that the complainant-wife requested custody of the children or had physical possession of the children at the time of trial and argued that her desire for custody was a source of bias in her testimony at the criminal trial. *See Fox*, 115 S.W.3d at 568; *Ryan*, 2009 WL 2045211, at *4. By contrast, Jones did not establish that Gonzales had sought or intended to seek custody of Alice in the event that Jones's and Jimenez's parental rights were terminated or that she had a direct interest in the termination proceedings. Thus, *Fox* and *Ryan* are inapposite here. Neither case supports Jones's argument or the court's holding.

Second, Jones's limited offer of proof did not suggest that Gonzales believed that what happened in Jones's criminal case could affect the CPS case's outcome. Even if the jury inferred that Gonzales wanted custody, the offer of proof did not support a determination that Gonzales believed that she could increase her chances of gaining custody by exaggerating her testimony against Jones. Again, without such evidence, Jones was unable to establish the required causal connection or logical relationship between evidence of the CPS proceedings and Gonzales's potential bias.

Third, Jones's offer of proof failed to address a variety of other highly relevant, related circumstances from which a factfinder might infer that Gonzales believed the CPS proceedings could result in her obtaining custody of Alice and was therefore potentially biased. There is no evidence that Gonzales had been

interviewed by CPS, was scheduled to be a witness in the CPS proceeding, knew the claims made by CPS, or was otherwise involved in the termination proceedings. There is no evidence that Gonzales knew the status of the CPS proceedings or why the proceedings were instigated;[3] knew any of the law regarding parental-termination proceedings; or knew how a conviction against Jones might affect the termination proceedings. Nor is there any evidence that Gonzales believed she had the financial, physical, and legal ability to be granted custody of Alice when Alice was at the time in the custody of her great-aunt.[4]

For these reasons, the offer of proof fell short of suggesting that Gonzales had any bias against Jones for the purpose of aiding her own efforts to obtain

---

[3]    Jones may have shied away from offering any details because it would have undermined his defense. Indeed, all the legal grounds for parental termination would have been at a minimum damaging character evidence, and some potential grounds would have directly damaged his defense that he only acted in self-defense, such as if there were any allegation by CPS that Jones was abusing Jimenez. *See* TEX. FAM. CODE § 161.001 (b)(1) (D) and (E) (providing that a parent's rights may be terminated if the parent "knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child" or "engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child").

[4]    There was no evidence explaining why Gonzales did not have custody at the time of trial instead of her sister. Perhaps Gonzales thought it was important for Jimenez to live with her and that she would not be able to do so if Jimenez's parental rights were terminated. Perhaps she believed her sister would be a better guardian. Even if the proffered evidence had been presented to the jury, it would have had no way to know the answers to these questions; it could only have speculated, just as the court does now.

custody of Alice, much less that the trial court's exclusion of the evidence fell outside the zone of reasonable disagreement.

The offer of proof was, at best, repetitive of the evidence already before or readily apparent to the jury. The jury knew that Gonzales cared for Alice, wanted what was best of her, had once served as her primary caregiver, and believed Jones was creating an unhealthy environment for her. It was readily apparent that if he went to jail, Jones would not have custody of Alice. Thus, the jury already could infer that Gonzales had a reason to potentially exaggerate her testimony against Jones. The trial court permitted Jones to cross-examine Gonzales on her desire to protect Alice, and Gonzales testified repeatedly that her primary concern was Alice's safety. From this testimony, the jury could have inferred that Gonzales had an interest in testifying as she did, even without being made aware of parental termination proceedings.

The offer of proof presented nothing new, except that Gonzales was aware that termination proceedings were currently pending. But, as explained above, the offer of proof did not show that Gonzales's awareness of the pendency of those proceedings was a source of potential bias against Jones beyond what was already in the record or readily apparent. Thus, I would hold that Jones failed to demonstrate that the trial court's prohibition on cross-examination of Gonzales with respect to the termination proceedings resulted in the exclusion of admissible

15

evidence of bias. *See Mays*, 285 S.W.3d at 889–90 ("primary purpose" of offer of proof is to enable appellate review by "set[ting] forth the substance of the proffered evidence"); *Mims*, 434 S.W.3d at 271 (offer of proof must show "what questions would have been asked and the expected answers to those questions" if examination had been permitted). It was Jones's burden in the offer of proof to "establish some causal connection or logical relationship between the pending" parental-termination proceedings and Gonzales's potential bias as a result. *Carpenter*, 979 S.W.2d at 634.  He failed to do so.

The principal difference between my analysis and that of the court concerns whether we should consider what Jones's attorney *might* have shown by a full cross-examination or only what he actually did show in his limited offer of proof. According to the court, "the controlling question on appeal is whether, had [Jones] been able to cross-examine Gonzales on the termination proceedings and her interest in them, he could have made the jury aware of a bias or interest on her part that would motivate her to testify against him on the underlying offense of domestic violence against Jimenez because of her interest in his child." The court fundamentally misunderstands the scope of our review.[5] We are not supposed to

---

[5]     The court compounds its errors by raising arguments that were not presented in the trial court and are not presented now, concluding that Gonzales offered inadmissible, unfairly prejudicial evidence regarding the dangers Jones presented to Gonzales's granddaughter.

consider what Jones "could have made the jury aware of"; instead, we consider what the testimony *from the offer of proof* would have shown the jury had it been admitted.[6] *See* TEX. R. EVID. 103(a)(2) (proponent must make offer of proof that informs trial court of substance of evidence unless substance is apparent from context); *Mims*, 434 S.W.3d at 271 (error is preserved by "making an offer of proof that demonstrates what questions would have been asked and the expected answers to those questions").

In other words, we must consider the evidence from the offer of proof, not what we think a fuller cross-examination on the topic might have revealed. *See Mims*, 434 S.W.3d at 271. Thus, I would hold that Jones's specific offer of proof— which must frame our analysis—failed to suggest any bias related to the CPS termination proceeding and, therefore, that Jones failed to establish a right to examine Gonzales about that proceeding.

---

[6]     I note that the trial court did not—and could not properly—limit the offer of proof. *See* TEX. R. EVID. 103(c) (trial court must allow party to make offer of proof and, at party's request, must direct that offer of proof be made in question-and-answer form); *Dopico v. State*, 752 S.W.2d 212, 215 (Tex. App.—Houston [1st Dist.] 1988, pet. ref'd) (holding that trial court "erred by refusing to allow an offer of proof in question and answer form"); *Andrade v. State*, 246 S.W.3d 217, 226 (Tex. App.—Houston [14th Dist.] 2007, pet. ref'd) ("The right to make an offer of proof is absolute . . . ."). This underscores the fact that it was Jones's burden to show, *through his offer of proof*, a causal connection or logical relationship between the pending parental-termination proceedings and Gonzales's potential bias as a result. To the extent his offer fell short of what it might have revealed concerning Gonzales's bias, it did so because Jones failed to elicit helpful testimony and, as a result, failed to meet his burden.

## 2. Jones's limited offer of proof was procedurally defective

Not only did Jones's offer of proof fail to demonstrate bias, it also suffered from two procedural defects.

First, Jones's offer of proof failed to segregate admissible evidence from inadmissible evidence. Jones's offer of proof included other items of evidence that the trial court had already excluded—i.e., evidence of a violent past between Jimenez and Gonzales and other instances of violence by Jimenez. For the first three-and-a-half pages of the transcript, consisting of 26 questions and answers, Jones cross-examined Gonzales regarding Jimenez's reputation for violence, threats against another woman who also had a child with Jones, threats against and physical violence against Gonzales, "fighting and fussing" with Jones, and an incident that occurred the night before Gonzales's trial testimony when someone let the air out of Gonzales's tires. The trial court did not abuse its discretion in excluding this evidence.[7]

---

[7] In a separate issue, Jones argues that he should have been allowed to present evidence of Jimenez's violent past for three reasons. I note that Jones did not preserve all of his arguments for appeal. But assuming that he did, they are all unavailing. First, Jones argues that the evidence was admissible under Rule of Evidence 404, specifically those provisions that apply when the defendant offers evidence of the defendant's or the complainant's character, and the prosecutor seeks to rebut that evidence. TEX. R. EVID. 404(a)(2)(A), (a)(3)(A). But this case presents the opposite situation: the testimony was given by a witness called by the State, and it is the defendant who seeks to rebut it. Second, Jones argues that the evidence was admissible under Rule of Evidence 405, which permits cross-examination into relevant specific instances of a person's conduct, but only when evidence of that person's character or character trait is admissible. TEX. R.

"When a trial judge is presented with a proffer of evidence containing both admissible and inadmissible statements and the proponent of the evidence fails to segregate and specifically offer the admissible statements, the trial court may properly exclude all of the statements." *Sohail v. State*, 264 S.W.3d 251, 260–61 (Tex. App.—Houston [1st Dist.] 2008, pet. ref'd) (quoting *Willover v. State*, 70

---

EVID. 405(a)(1). Jones does not present any argument supporting admissibility of evidence of Jimenez's character, except in rebuttal, and does not brief his argument based on Rule 405. Accordingly, he has waived any argument by inadequate briefing. *See* TEX. R. APP. P. 38.1(i). Third, Jones argues that the evidence was admissible for the purpose of correcting a false or misleading impression created in the minds of the jurors by Gonzales's testimony that Jimenez had "always been a good kid" who "never was in trouble." Jones has failed to demonstrate that the cross-examination he sought to conduct of Gonzales was relevant to either the offense charged or the defense of self-defense. Whether Jimenez had a history of violence has no bearing on any element of the offense of assault of a family member. And Jones made no effort to demonstrate that he knew Jimenez had been violent with her mother in the past, causing him to reasonably believe it was "immediately necessary" to strike Jimenez in self-defense. *See* TEX. PENAL CODE § 9.31(a). Moreover, the offer of proof regarding Jimenez's violent past is extremely sparse. To the extent Jones preserved any arguments regarding rebuttal evidence related to Jimenez's past violence, the trial court's decision to exclude such evidence fell within the zone of reasonable disagreement.

Jones also included in his offer of proof inadmissible evidence that Jimenez disabled Gonzales's car by letting air out of its tires to prevent Gonzales from testifying at Jones's trial. Jones argues that this evidence was admissible to rebut Gonzales's testimony regarding Jimenez's character. Jones's argument fails because Jones did not offer any proof that Jimenez disabled Gonzales's car. On the contrary, Gonzales, who was the only witness on this topic, testified that she did not know who let air out of her car's tires, but that other cars were also affected. She also testified that she believed that "some kid," not Jimenez, was responsible and that Jimenez had no motive to disable the car. Thus, Jones did not present any evidence to the trial court that would tend to indicate that it was Jimenez who disabled the vehicle. The trial court properly excluded this evidence.

19

S.W.3d 841, 847 (Tex. Crim. App. 2002)).[8] Because Jones failed to segregate Gonzales's statements relating to Jimenez's violent conduct from her statements relating to the CPS termination proceedings, and because the former were properly excluded, the trial court was entitled to exclude the latter as well.

Second, and perhaps more fundamentally, Jones failed to obtain a ruling from the trial court. Preservation of error requires not only "an offer by the defendant" but also "a ruling from the trial court." *Bohannan v. State*, No. 09-13-00090-CR, 2014 WL 5490936, at *5 (Tex. App.—Beaumont Oct. 29, 2014, pet. granted); *see Ites v. State*, 923 S.W.2d 675, 678 (Tex. App.—Houston [1st Dist.] 1996, pet. ref'd) (holding that State did not preserve error on trial court's improper

---

[8] *See* TEX. R. EVID. 103(a)(2); *Jones v. State*, 843 S.W.2d 487, 492–93 (Tex. Crim. App. 1992) ("Because appellant failed to specify which portion of the transcript he intended to introduce into evidence, the court was presented with a proffer containing both admissible and inadmissible evidence. When evidence which is partially admissible and partially inadmissible is excluded, a party may not complain upon appeal unless the admissible evidence was specifically offered. Thus, since the substance of the specific evidence that appellant sought to introduce was not presented to the court, it was not an abuse of discretion for the trial court to exclude the transcript."), *abrogated on other grounds by Maxwell v. State*, 48 S.W.3d 196 (Tex. Crim. App. 2001); 2 Steven Goode & Olin Guy Wellborn III, TEXAS PRACTICE SERIES, GUIDE TO THE TEXAS RULES OF EVIDENCE § 103.2, at 20 (4th ed. 2016) (noting that when offer of proof fails to segregate admissible evidence from inadmissible evidence, appellant "will be told by the appellate court that it was his responsibility" to separate them "and an objection that was good as to part of the unsegregated mass may be sustained as to all."); G. Dix and J. Schmolesky, 43A TEXAS PRACTICE SERIES, CRIMINAL PRACTICE AND PROCEDURE § 53:130, at 1135 (3d ed. 2011) (observing that if evidence "is not only partly admissible but also partly inadmissible, the offer of proof must specifically identify and offer the admissible portion in order to preserve error").

exclusion of confession in part because there was no ruling sustaining objection to testimony). Jones's counsel never obtained a ruling on the admissibility of the offered testimony, and without a ruling, he did not preserve error.[9]

**Conclusion**

The court's holding is legally incorrect: it ignores well-established law governing offers of proof and appellate review of evidentiary rulings. The holding sets forth an unworkable rule that ignores the realties facing trial courts with busy dockets and limited resources. And it will encourage litigants to file meritless appeals—and encourage appellate courts to indulge them. For these reasons, I respectfully dissent.


Harvey Brown
Justice

Panel consists of Justices Jennings, Keyes, and Brown.

Justice Brown, dissenting from the judgment.

Publish.  TEX. R. APP. P. 47.2(b).

---

[9]     The trial court's pretrial finding that the testimony was not relevant is analogous to a ruling on a motion in limine, which generally does not preserve error related to the exclusion of evidence. *See Geuder v. State*, 115 S.W.3d 11, 14–15 (Tex. Crim. App. 2003).