



## MEMORANDUM OPINION

No. 04-11-00173-CR

Charlton Ellison **BRADSHAW**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 186th Judicial District Court, Bexar County, Texas
Trial Court No. 2009CR12809A
Honorable Maria Teresa Herr, Judge Presiding

Opinion by:   Rebecca Simmons, Justice

Sitting:   Rebecca Simmons, Justice
Steven C. Hilbig, Justice
Marialyn Barnard, Justice

Delivered and Filed:  May 9, 2012

AFFIRMED

Appellant Charlton Ellison Bradshaw was found guilty of capital murder and sentenced to imprisonment for life without the possibility of parole.  Bradshaw raises two points of error on appeal: (1) the evidence was legally insufficient to support the jury's guilty verdict, and (2) the trial court erroneously prohibited effective cross-examination of a witness thereby violating Bradshaw's right to confront the witness.  We affirm the trial court's judgment.

**BACKGROUND**

On October 16, 2009, James Holmes, the victim, checked into a motel.  He met Larry Mitchell, another resident of the motel. Holmes was seeking to purchase crack cocaine from Mitchell.  Mitchell and his girlfriend, Tonya Moody, left the motel in Mitchell's vehicle and picked up two other men, Charlton Bradshaw and Calvin Massengale, who provided the cocaine. While traveling back to the motel, the group discussed robbing Holmes after supplying him with the cocaine.

Mitchell delivered the drugs to Holmes's room and noticed that Holmes was using a knife to cut the cocaine.  Mitchell returned to his own room and saw Bradshaw place an ashtray in a rag or sock.  Mitchell believed this was something to be used as a weapon in the robbery.  Later, Moody went up to Holmes's room alone.  Massengale and Bradshaw arrived shortly thereafter. When Mitchell joined the others in Holmes's room, he found Bradshaw holding Holmes's knife and Holmes yelling that he was being robbed.  Mitchell and Moody fled to Mitchell's vehicle; Bradshaw and Massengale followed shortly behind.  Holmes chased after Bradshaw and Massengale and screamed, "Stop them, they robbed me"; he collapsed on the sidewalk.  Later that evening, Bradshaw told a friend that he had stabbed a man.  Two other people overheard the conversation.

Three days later Bradshaw was arrested and charged with the capital murder of Holmes. He pleaded not guilty, and a jury trial was held.  A forensic pathologist testified that Holmes died from a stab wound to his left chest that cut the edge of his left lung and pierced his heart. Mitchell testified that he saw Bradshaw holding a knife after Bradshaw robbed Holmes.  The two witnesses that overheard Bradshaw's account of the stabbing also testified at trial.  After hearing

the evidence, the jury found appellant guilty of capital murder. He was assessed a life sentence. Bradshaw appeals the trial court's judgment.

LEGAL SUFFICIENCY

Bradshaw contends that he did not have the requisite intent to support the jury's finding that he intentionally committed the capital murder of Holmes. He does not challenge any other element required to prove the offense of capital murder.

## A.  Standard of Review

In reviewing the legal sufficiency of the evidence in a criminal case, a reviewing court examines "the evidence in the light most favorable to the prosecution" and determines whether "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *See Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *accord Brooks v. State*, 323 S.W.3d 893, 894–95 (Tex. Crim. App. 2010) (plurality op.).

## B.  Capital Murder

A person commits capital murder if he "intentionally commits [a murder as defined in section 19.02(b)(1)] in the course of committing or attempting to commit . . . robbery." TEX. PENAL CODE ANN. § 19.03(a)(2) (West 2011). A person commits the offense of murder if he "intentionally or knowingly causes the death of an individual." *Id.* § 19.02(b)(1).

In a capital murder case resulting from a robbery, there is no requirement that the intent to cause death be premeditated before the robbery. *Rousseau v. State*, 855 S.W.2d 666, 674 (Tex. Crim. App. 1993). Instead, the intent can be formed when the murder is actually committed. *Id.* Circumstantial evidence alone can be sufficient to prove intent for capital murder. *Narvaiz v. State*, 840 S.W.2d 415, 426 (Tex. Crim. App. 1992). "The jury may infer the intent to kill from the use of a deadly weapon unless it would not be reasonable to infer that

death or serious bodily injury could result from the use of the weapon." *Jones v. State*, 944 S.W.2d 642, 647 (Tex. Crim. App. 1996); *accord Godsey v. State*, 719 S.W.2d 578, 580–81 (Tex. Crim. App. 1986). A deadly weapon is "a firearm or anything manifestly designed, made, or adapted for the purpose of inflicting death or serious bodily injury; or . . . anything that in the manner of its use or intended use is capable of causing death or serious bodily injury." TEX. PENAL CODE ANN. § 1.07(a)(17); *see McCain v. State*, 22 S.W.3d 497, 502–03 (Tex. Crim. App. 2000). A knife is not a deadly weapon per se; however, a knife may be a deadly weapon depending on its use and capability of causing death or serious bodily injury. *See Denham v. State*, 574 S.W.2d 129, 130 (Tex. Crim. App. 1978); *see also* TEX. PENAL CODE ANN. § 1.07(a)(17). Moreover, anything that is actually used that caused the death of another is a deadly weapon because "a thing which actually causes death is, by definition, 'capable of causing death.'" *See Tyra v. State*, 897 S.W.2d 796, 798 (Tex. Crim. App. 1995) (quoting TEX. PENAL CODE ANN. § 1.07(a)(17)) (determining that a pickup truck "was undoubtedly a deadly weapon" where the vehicle actually caused a death).

## C. The Evidence Was Sufficient to Support the Guilty Verdict

Mitchell testified that Bradshaw fashioned a weapon from an ashtray and a rag before the robbery began. During the robbery, the evidence shows that Bradshaw abandoned the ashtray as his weapon of choice in favor of a knife. Mitchell testified that he saw Bradshaw holding a knife and that Holmes screamed to Mitchell that he was being robbed. Two witnesses testified to overhearing Bradshaw admit to "poking" or "stabbing" someone on the day of Holmes's death. The motel manager's spouse testified that he witnessed Holmes running after Bradshaw and Massengale and that Holmes shouted, "They robbed me." The forensic pathologist testified that Holmes died from a single stab wound to the chest that pierced his lung and heart. The knife

used to kill Holmes was a deadly weapon because it actually caused his death.  *See Tyra*, 897 S.W.2d at 798; *see also* TEX. PENAL CODE ANN. § 1.07(a)(17).  Under these circumstances, a rational fact-finder could have found beyond a reasonable doubt that Bradshaw intentionally caused Holmes's death.  *See Rousseau*, 855 S.W.2d at 674–75; *Dunn v. State*, 819 S.W.2d 510, 513–14 (Tex. Crim. App. 1991).  Accordingly, the evidence is sufficient to support the jury's verdict.  *See Jackson*, 443 U.S. at 319; *Brooks*, 323 S.W.3d at 894–95.

## RESTRICTION OF CROSS-EXAMINATION

At trial, Calvin Massengale's sister, Monique Wolford, testified under subpoena from the State.  Wolford stated that on the day of Holmes's death, she overhead Bradshaw admit that he "stuck" Holmes earlier that day.  At the time of her testimony, Wolford was on probation for aggravated robbery.  She testified that she had made no deals with the State in exchange for her testimony, but stated that she was aware that she could be held in contempt or in violation of her probation if she ignored the subpoena.  The court did not allow Bradshaw's counsel to question the range of punishment Wolford may have faced had she ignored the subpoena.  Bradshaw contends that the trial court's denial of this line of questioning denied him the ability to confront the witness and thus show the witness's bias.

## A.  The Confrontation Clause

"In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him . . . ."  U.S. CONST. amend. VI;  *Crawford v. Washington*, 541 U.S. 36, 38, (2004); *Carroll v. State*, 916 S.W.2d 494, 496–97 (Tex. Crim. App. 1996).  The right to confrontation "is violated when appropriate cross-examination is limited."  *Carroll*, 916 S.W.2d at 497.  However, a trial court has broad discretion in limiting cross-examination of witnesses in a criminal prosecution "based on concerns about, among other things, harassment, prejudice,

confusion of the issues, . . . or interrogation that is repetitive or only marginally relevant." *Irby v. State*, 327 S.W.3d 138, 145 (Tex. Crim. App. 2010) (quoting *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986) (internal quotation marks omitted)), *cert. denied*, 131 S. Ct. 904 (2011); *accord Hammer v. State*, 296 S.W.3d 555, 561 & n.7 (Tex. Crim. App. 2009); *Lagrone v. State*, 942 S.W.2d 602, 613 (Tex. Crim. App. 1997).

With respect to the cross-examination of a witness on probation, the party seeking to show bias must establish a causal connection or logical relation between the witness's probationary status and her potential bias or prejudice in favor of the State. *Irby*, 327 S.W.3d at 147–48. Additionally a restriction on cross-examination will not be improper "as long as (1) the possible bias and motive of the State's witness is clear to the trier of fact and (2) the accused has otherwise been afforded an opportunity for a thorough and effective cross-examination." *Stults v. State*, 23 S.W.3d 198, 204 (Tex. App.—Houston [14th Dist.] 2000, pet. ref'd) (citing *Carmona v. State*, 698 S.W.2d 100, 104 (Tex. Crim. App. 1985)); *accord Ryan v. State*, No. 04-08-00594-CR, 2009 WL 2045211, at *4 (Tex. App.—San Antonio July 15, 2009, no pet.) (mem. op., not designated for publication).

## B. Bradshaw's Right to Confront the Witness Was Not Violated

Bradshaw argues that he was prevented from questioning Wolford regarding the range of punishment she may face if she had refused to testify. Wolford testified that she was on probation for a criminal offense and that she knew that her probation could be revoked for failure to testify. But, this alone is not a violation of Bradshaw's right to confrontation. *See Irby*, 327 S.W.3d at 149. Bradshaw makes no contention that Wolford received a benefit from the State in exchange for the content of her testimony, and Wolford testified that she received no deals in exchange for her testimony. Moreover, Bradshaw was afforded a thorough and effective

opportunity for cross-examination, even without Wolford stating the range of punishment she may face. *See Stults*, 23 S.W.3d at 204. Wolford had the opportunity to otherwise discuss her probation and her motives for testifying. Bradshaw has not met his burden of establishing a causal connection between Wolford's probation and her bias or prejudice in favor of the State. *See Irby*, 327 S.W.3d at 147–49. Thus, the court did not err in limiting Bradshaw's cross-examination of Wolford. Accordingly, the trial court did not exceed its discretion in refusing to allow testimony regarding Wolford's possible range of punishment, and Bradshaw was not denied his right to confront the witness. *See id.* at 147–48; *see also Van Arsdall*, 475 U.S. at 679; *Lagrone*, 942 S.W.2d at 613.

## C. Harm Analysis

Even assuming the court erred in limiting the cross-examination of Wolford, Bradshaw cannot establish that he was harmed. When the Confrontation Clause is violated, the error is subject to a constitutional harmless error analysis. *Van Arsdall*, 475 U.S. at 684; *Langham v. State*, 305 S.W.3d 568, 582 (Tex. Crim. App. 2010); *Shelby v. State*, 819 S.W.2d 544, 546 (Tex. Crim. App. 1991). If evidence has been erroneously excluded, we examine the error under a three-prong harm analysis test. *See Shelby*, 819 S.W.2d at 547 (citing *Van Arsdall*, 475 U.S. at 684). First, we assume the damaging potential of the cross-examination was fully realized—i.e., Wolford's testimony was motivated by bias. *See Van Arsdall*, 475 U.S. at 684; *Shelby*, 819 S.W.2d at 547. Second, we examine the following factors:

(1) The importance of the witness' testimony in the prosecution's case;
(2) Whether the testimony was cumulative;
(3) The presence or absence of evidence corroborating or contradicting the testimony of the witness on material points;
(4) The extent of cross-examination otherwise permitted; and,
(5) The overall strength of the prosecution's case.

*Shelby*, 819 S.W.2d at 547; *accord Van Arsdall*, 475 U.S. at 684; *Davis v. State*, 203 S.W.3d 845, 850 (Tex. Crim. App. 2006) (noting the factors are non-exclusive). The "importance" of Wolford's testimony in this case militates against a finding of harm. Multiple witnesses testified against Bradshaw, and Wolford's testimony was cumulative; Tiffany Barnett testified to the same facts. *See Van Arsdall*, 475 U.S. at 684; *Shelby*, 819 S.W.2d at 547. Further, there is no evidence contradicting Wolford's testimony; rather, Barnett's testimony corroborates Wolford's statements. *See Van Arsdall*, 475 U.S. at 684; *Shelby*, 819 S.W.2d at 547. Additionally, the court allowed Bradshaw to extensively question Wolford regarding her probation and any potential bias. The only limitation imposed by the court was that Bradshaw was not permitted to question the potential range of punishment Wolford faced had she ignored the subpoena. Further, the overall strength of the State's case supports a determination that Bradshaw was not harmed by the trial court's limitation of the cross-examination of Wolford. *See Van Arsdall*, 475 U.S. at 684; *Shelby*, 819 S.W.2d at 547. Two witnesses, Mitchell and Moody, testified that Bradshaw robbed Holmes. Mitchell testified that he saw Bradshaw holding a knife moments after Holmes was stabbed in the chest. The motel manager's husband testified that he saw Holmes chasing after Bradshaw and Massengale and was screaming, "Stop them, they robbed me." Wolford and Barnett testified that they overheard Bradshaw bragging about stabbing Holmes. A forensic pathologist testified that Holmes's death was caused by a knife wound that pierced Holmes's heart and lung.

Finally, in light of the first two prongs, we evaluate whether the error was harmless beyond a reasonable doubt. *Van Arsdall*, 475 U.S. at 684; *Shelby*, 819 S.W.2d at 547. Under these circumstances and analysis of the five *Van Arsdall* factors, we conclude beyond a

reasonable doubt that any error the trial court may have made in limiting cross-examination of Wolford was harmless.  *See Van Arsdall*, 475 U.S. at 684; *Shelby*, 819 S.W.2d at 547.

## CONCLUSION

The evidence was legally sufficient to support Bradshaw's conviction for capital murder. Further, Bradshaw's right to confront witnesses against him was not violated.  Accordingly, we affirm the trial court's judgment.

Rebecca Simmons, Justice

DO NOT PUBLISH